Wednesday, October 30th, 1816.
Judge Roane
pronounced the following opinion of the Court, t
The Court is of opinion that, upon the testimony exhibited in this cause, there is no ground to say that the sale of the negroes Peter and Molly in the Bill mentioned was a transaction to cover a reservation of usurious interest upon a loan of money ; — but that, for aught that appears, the said sale was a real sale of the said negroes upon a credit; in which case it is lawful to agree upon and take a greater price than that, with interest, for which they had been previously offered in cash ; and that, consequently, there is no ground to impeach the Judgment now sought to be enjoined.
But the Court is of opinion that the sale of the Appellee’s negroes Mingo, John, and Celia, and the purchase of them by the Appellant, was made under circumstances which ought to invalidate the same. It is in full proof that the Appellee stated at the time of the sale that he had an Injunction from the Court of Chancery, by which all persons were inhibited from selling the said slaves; that he offered to exhibit the same in full, and establish the identity of the- negroes in relation to those mentioned in the said Injunction Bill; and that it was only owing to the conduct of the Appellant, and his brother the Deputy Sheriff that this was not done. In this transaction the conduct of the Appellee was entirely correct, as he acted in obedience to the decree of a competent Court, then admitted by the Appellant to have been in existence, whereas the Appellant and the said Sheriff acted in contempt thereof. As to what is said of the said Injunction not binding the right of the Appellant, as be was no party to the suit, in which it was obtained; while this is admitted, it only means that he is not inhibited from asserting that right by a suit or proceeding, to which he is a party. While the Injunction, however, is in force, it is conclusive that the Appellee bad no right in the said slaves which could at that time be lawfully *193 sold to satisfy the execution against him. A sale of his interest (herein, at that time, and under those circumstances, would unavoidably sacrifice that interest, if it should be afterwards found that he had any; and would be to consider that, as his property, which, under an existing decree, must be considered as the property of, or as liable to satisfy the claims of others. The result of the sale before us is a commentary upon the doctrine thus laid down. All other persons except the Appellant were prevented, by the course adopted by him, from buying as Belches’s property, the negroes in question, and they were consequently sold for considerably less than their value. The sale therefore ought not to stand, but the Appellant be decreed to deliver up the said negroes and their increase to the Appellee, and pay to him (he amount of their hires.
Here the Decree might end, were it not that the Appellant has got a Judgment against the Appellee and Francis Willis, and may proceed against him or them for satisfaction thereof; and if it now appears to the Court that there is some specific property bound for the payment of the Appellant’s debt, that property ought to be subjected to pay it in the first instance. The Appellee alleges in his Bill that, prior to the execution of the Trust Deed to Hughes and Camp, contained in the proceedings, Charles Grymes had made over to him and Francis Willis (his Co-security) the said negroes Peter and Molly, to indemnify them for their securifyship in the bond in question; and the defendant Tomkies, in his answer, admits, that “ he believes the Appellee and Willis did lake the said Deed” for the purpose aforesaid. Admitting, (on which, however, the Court gives no opinion,) that the Appellee consented that, upon the execution of the Deed to Hughes and Camp, his own lien on the negroes Peter and Molly by virtue of the previous Deed to him and Willis should be released, he did not release it, nor was he competent to release it, as it relates to Willis, who was no party to that transaction. As to Willis, therefore, at least, the said Deed is still in full force ; and if it were in fact destroyed, as is stated by the Appellee in his bill, under the supposition, therein also mentioned, it would be set up as to Willis in a Court of Equity- í littbthe necessity of that proceeding is prevented by the admission of the said *194 Tomkies as aforesaid. That Deed, as to WiUis, will therefore be considered as if it were now before the Court.
The Court is of opinion, that, even if Willis had been no party to the Judgment now sought to be enjoined, nor to the execution, it would be competent to the Appellee, after paying off the same, to resort to him as a co-security for contribution of a moiety thereof; and that, for the purpose of preventing circuity, and getting payment out of the proper fund, it would be also competent to him, as standing in the place of Willis, to go for the said moiety against the negroes conveyed by the said Deed.
The Court is also farther of opinion that, under that hypothesis, it would be competent to the Appellee to stand in the place of Willis, and charge the said negroes for the whole [ sum. Nothing is more consonant to natural Justice, than that the proper debts of every man should be paid out of his own estate, in case of innocent securities, and that that'-, property of his, iu particular, should be subjected, which has been bound thereto by a specific and existing lien. These principles will avail the present Appellee, supposing him to have released for himself his own proper lien created by the first deed. In the case of Eppes Executor of Wayles v. Randolph. 2 Call 125. Randolph, by a Bond, to which Wayles was his surety, bound himself and his heirs to Bevins. Randolph became insolvent as to his personal estate, and Bevins got a decree, for payment of the Bond, against Wayles's representatives, who paid the same. Wayles's representatives, on these facts being manifested to the Court, were permitted to stand in the place of Bevins; be considered as Bond Creditors; and charge the Lands of Randolph in the hands of his heirs, on which they had themselves no lien. The principles of this decision go to charge the negroes conveyed by the Deed to the Appellee ; and, as all the parties concerned in interest are now before the Court, may be applied in favour of the Appellee Belches. That view of the case is, however, much strengthened, when it is considered that the Judgment in Gloucester Court was also ren/ierc-l against Willis, and the Execution wras issued aliicfagainst bijsfíhoügh it was only levied upon the property of the Appellee.
*195 It is but a small boon to ask for a security that he shall make the property of his principal, which is bound by a specific and existing lien, liable, in exoneration of his own, in the same manner as it would have been, if the execution had been levied upon the property of his co-security in the first instance. The Court is therefore of opinion, that the Appellant should be decreed to resort to the negroes Peter and Molly and their increase, (which were purchased by Tomkies from the Trustees Hughes and Camp,) for the payment of his debt and interest; that, in the event of payment not being made by Tomkies within a short and given day, C'e said negroes should be sold to satisfy the same ; that, if the said Tomkies should have sold the said slaves, or any of them, he or his representatives should be decreed to pay the amount thereof in exoneration of his bona fide alienees ; that, in the case of the insolvency of him, or his estate, for such amount, in the whole or in part, the Appellant shall he at liberty to seek satisfaction from the said negroes and their increase, in whose hands soever they may be, by a suit or proceeding, to which the respective holders and the Appellee are parties ; and that the Appellant should only be at liberty to resort to the proper goods of the Appellee for such part of his debt and interest, if any, as may remain unpaid from the several sources above-mentioned. It is no objection to this decree, that it is nominally in favour of one defendant, and agaiust another ; for it is substantially a decree in favour of the plaintiff, (Belches.) who thereby exonerates his own esfaie. Therefore it is decreed and ordered, that so much of the decree of the said Court of Chancery, as conforms to the principles of this Decree be affirmed ; and that so much of it, as conflicts therewith be reversed and annulled; and also that the Appellant pay unto the Appellees, being the parties substantially prevailing, their costs by them about their defence in this behalf expended. And it is ordered that the cause be remanded to the said Court of Chancery, to be finally proceeded in pursuant to the principles of this decree.