By the Court. Sandford, J.
The defendant interposes two preliminary objections to the proceedings supplementary to the execution, which we will first examine; although the omission to raise them at an earlier period, ought perhaps to be deemed a waiver of the alleged irregularities.
Pirst. It is contended that the assignee of a judgment cannot prosecute this proceeding at all, under the provisions of the code of procedure ; which gives the remedy only to the “judgment creditor.” That the only judgment creditor in this case is Andrew Ross, the plaintiff in the judgment, and that his assignee, Mathew T. Wallace, is not the judgment creditor, within the meaning of the code, although he may be the owner of the judgment.
We think this objection is wholly unfounded. The judgment creditor is the person who owns the judgment, to whom it is due, and who alone has a right to receive it and to give a discharge; not the person in whose name the judgment was recovered, but who has transferred it and thereby ceased to be a creditor of the defendant. We suppose that one to whom a bond has been assigned, is beyond all doubt the bond creditor, and that no one would think of calling the obligor the bond creditor, after he had parted with his interest in the debt by an absolute assignment.
The provision of the revised statutes, enacting the then established rule of equity which was the foundation of creditors’ suits, (as they were usually termed,) gave the remedy to “ the party suing out the execution; ” which is apparently much more restricted in its scope, than the word “judgment creditor ” in the code. (2 R. S. 173, § 38.) Nevertheless, it was well settled, that an- assignee of a judgment to whom it was transferred after the issuing and return of an execution, could file a creditor’s *680 bill, without taking out a new execution. (Gleason v. Gage, 7 Paige, 121.)
The chapter of the code granting to judgment creditors this summary remedy, was avowedly a substitute for the proceeding by a creditor’s bill; and we cannot imagine that there was any intention to make it less easy or less extensive in its application. We are perfectly clear, that under its provisions, an assignee may institute the proceeding, upon an execution returned by his assignor.
Seeond. The next objection is, that the proceeding should have been in the name of the assignee as plaintiff. It has throughout been confessedly prosecuted by the assignee, but it is said the papers should all have been entitled in his name.
So far as the affidavits are concerned, an answer to the objection may be found in section four hundred and six of the code, which virtually makes it unnecessary to insert any title in an affidavit.
' Without regard to that section, we think there is no foundation for the objection. The “proceedings supplementary to the execution,” are all in the action in which the judgment was recovered. Their design is to obtain satisfaction of the judgment, and they are as much proceedings in the original suit, as are the executions on which they are founded. Them is nothing in the entire chapter, which countenances the idea that the remedy it provides is a new action or suit.
Where the cause of action is transferred pending the suit, the action may be continued in the name of the original party, or the court may allow the assignee to be substituted in his place. (Code, § 121.) Eor the purposes of this proceeding, the action is still pending; and it is properly entitled in the name of the original plaintiff.
This brings us to the examination of the principal question in the cause-, the alleged contempt of the defendant in disobeying the orders of the eighteenth and twentieth of December, 1849. The same question, substantially, was decided in the case of Le Grand and Delmotte v. Hoguet, by one of us at the special term in June, 1849, and by the other two justices, on an appeal from his decision, in March, 1850. We were, neverther *681 less, induced by its importance, to hear it argued anew, and after maturely considering it, we see no reason to change our opinion. The full, clear, and learned exposition of the subject, contained in the report of the referee, makes it quite unnecessary for us to go into the discussion at large.
In regard to the matter of fact, no one can doubt, upon the testimony, that the defendant confessed the judgment to Willmarth, for the purpose and with a view to have Willmarth obtain a receiver, and a transfer to him of the defendant’s interest in his grandfather’s estate, and thereby to prevent Wallace from reaching that interest by his pending proceedings in this suit.
Those proceedings were commenced two months before any steps were taken by Willmarth, were prosecuted with diligence by the creditor, and would have been perfected and terminated before the appointment of a receiver in Willmartli’s suit, but for the delays interposed by the defendant.
The injunction commanded the defendant to refrain from disposing of, or, in any manner, interfering with his property, or rights in action. By the combined means of confessing a judgment to Willmarth, and purposely interposing delays in the proceeding of his more vigilant creditor, Wallace, he has caused his property which the latter would have obtained in regular course, to be vested in a receiver, appointed in the suit and for the benefit of Willmartli. He has thus paljiably interfered with his property, and so far as he could, has disposed of it, so that it shall not be obtained by Wallace. Thus, the injunction orders made by the justices of this court, have been plainly and intentionally violated. We were referred to the case of Lansing v. Easton, (7 Paige 364,) as an authority, that a defendant who was under a similar injunction in a creditor’s suit, in the late court of chancery,' might confess a judgment, without disobeying the command of the court; and the one hundred and ninety-fifth rule of that court, was cited to the same proposition.
As to the case in Y Paige, the rule is there laid down, that any active interference with the property by the defendant, for the purpose of having the legal title to the same transferred to *682 another, and thereby to deprive the complainant of the equitable lien he has acquired upon the property by the filing of his bill, was a violation of the letter as well as the spirit of the injunction. And the application of the rule made in that case by the chancellor, amply sustains our conclusion in the case before us. The. chancellor’s observation as to the effect of confessing a judgment, was no more than had already been made the law of the court by the one hundred and ninety-fifth rule. And we do not intend to decide that simply confessing a judgment, will be á violation of these injunction orders under the code. If, how- . ever, it be done with an obvious intent to change the disposition of the debtor’s property, to the prejudice of the creditor who has obtained the injunction, and has that effect, we. shall hold, as we do in this case, that it is as much a violation of the injunction, as would be any more direct transfer or disposal of the same property.
The saving of the expense of a suit is no longer a motive for confessing a judgment, under such circumstances; and debtors under injunction, at the suit of prior judgment creditors, will do well to see to it, that there be no other act of theirs, in addition to the confession of the judgment, which will point to an intention to prefer another creditor, in the disposal of their property, over him who has obtained the injunction.
The defendant having violated the injunction orders, it remains to determine the amount of the fine which shall be imposed on him for his contempt of court. The statute prescribes, that this shall be sufficient to indemnify the plaintiff for the injury he has sustained, and to satisfy his costs and expenses. (2 R. S. 538, § 21.) It appears, that the fund diverted by the defendant’s misconduct, from the plaintiff’s receiver to the receiver of Willmarth, was sufficient to pay the plaintiff’s debt and costs.
It may be said, that,' to the extent of his debt and costs, the plaintiff may still obtain that fund, by an application to the supreme court, on the ground of a prior lien by his instituting proceedings in this court, supplementary to his execution. If the principle which prevailed on this subject, in the court of chancery, be adopted, and applied to these substituted proceed *683 ings under the code, the plaintiff is undoubtedly entitled to priority over Willmartil’s subsequent receivership in the supreme court. And we are free to say, that we do not perceive, how the courts are to avoid incessant confusion and clashing of jurisdiction, in respect of proceedings supplementary to an execution, unless the just and equitable principle of the court of chancery, in relation to successive creditors’ suits, be adopted and applied to them. It is not for us to anticipate what rule the supreme court may adoption this subject, and as no such rule has been as yet adopted there, so far as we know, we must proceed to line the defendant to the extent of the plaintiff’s injury, as it now appears. If, hereafter, the plaintiff obtain any part of the fund from the supreme court, the defendant may apply to mitigate the fine accordingly.
The defendant must be fined a sum equal to the amount of the judgment, with interest, and the plaintiff’s expenses. We allow to the plaintiff thirty dollars for costs of the supplementary process, fifty dollars for the charges of his attorney and counsel, on the application to punish the contempt and the reference and subsequent proceedings thereon, and the fees paid to the referee for his services on both of the references. The order will direct the defendant to stand committed until the fine be paid.