## SHEAFE *v.* SHEAFE.

Where property is subject to execution, a creditor who has obtained a specific lien upon it by attachment, judgment, or the issuing of an execution, may maintain a bill to set aside or remove a fraudulent conveyance or obstruction to a levy thereon.

Under the provisions of the statute, the Supreme Court may make such orders in relation to the property, real or personal, of a husband ordered to pay alimony to a divorced wife, as may be necessary to carry the decree for alimony into full effect and protect the rights of the wife.

While parties are enjoined in chancery against aiding or assisting another in conveying or otherwise disposing of his property, they will not be permitted to secure an alienation thereof to themselves by proceedings at law against him as their debtor.

A perpetual injunction against one's alienating his interest in certain property as against the plaintiff's claims upon it, gives to the plaintiff an equitable lien upon that interest to the extent of those claims, at least as against the parties to the suit in which the injunction issued.

IN EQUITY. On the 22d day of September, 1856, the plaintiff, formerly the wife of William H. Sheafe, one of

the defendants, filed in this court her bill in chancery, alleging that she was the owner of an execution in favor of one Waldron, upon which a levy had been commenced on said William H. Sheafe's interest in the Jacob Sheafe farm ; that by a decree of the Superior Court, July term, 1852, she was entitled to $150 alimony, per annum, from said William H. Sheafe ; that the only property of said William H. Sheafe, in this State, was his interest in the said Jacob Sheafe farm ; that he had absconded to avoid paying said alimony and other debts ; that he had made various fraudulent conveyances of his said interest to the other defendants, and threatened, by their assistance, so to convey away the same as to prevent her satisfying her said execution thereon, or ever obtaining any thing for her said alimony ; and asking that the alleged fraudulent conveyances might be set aside, and that the defendants might be perpetually enjoined against conveying or aiding in conveying said William H. Sheafe's interest in the Jacob Sheafe farm, to the prejudice of her right to alimony therefrom under the decree of the Superior Court, and for general relief. The other facts in the case sufficiently appear in the opinion of the court.

*S. H. Goodall*, for the plaintiff.

*A. R. Hatch*, for the defendants.

Fowler, J. The object of the plaintiff's bill, although somewhat inartificially drawn, was clearly two fold ; first, to remove out of the way of the levy of the Waldron execution, belonging to the plaintiff, all fraudulent mortgages and conveyances of William H. Sheafe's interest in the Jacob Sheafe farm, and secondly, to obtain from the court a decree which should secure to the plaintiff a lien upon that interest for the payment of the sums due and to become due to her annually, as alimony, under the

decree of the Superior Court, July term, 1852, ordering said William H. Sheafe to pay her the sum of $150 per annum, for that purpose.

In the opinion delivered in this case at the adjourned term in March last, we recognized the validity of the plaintiff's claim for relief on both these grounds. Upon the first point we remarked: "The general principle deducible from the authorities seems to be, that where property is subject to execution, and a creditor seeks to have a fraudulent conveyance or obstruction to a levy or sale set aside or removed, he may file and maintain a bill for that purpose as soon as he has obtained a specific lien upon the property, whether by attachment, judgment, or the issuing of an execution. *Tappan* v. *Evans*, 11 N. H. 327, and cases cited; *Bay State Iron Company* v. *Goodall*, 39 N. H. 223.

"In the present case the plaintiff, as the assignee and legal owner of the Waldron judgment and execution, had commenced a levy, under a prior attachment on the original writ, upon the property in question, before filing her bill. She was, therefore, in possession of such a lien as would enable her to maintain the bill as a creditor of William H. Sheafe. The execution has since been returned as satisfied by virtue of the levy; the plaintiff professes herself contented with its sufficiency; and so far as this suit is concerned these defendants are not now in a situation to interfere, since the question of its validity does not here arise."

Upon the other point we at the same time said: "Furthermore, by a decree of the Superior Court, July term, 1852, William H. Sheafe was ordered to pay to the plaintiff the sum of $150 per annum, as alimony. The allegations of the bill, that said William H. Sheafe has absconded, and that the only property of his remaining in the State from which this alimony or any portion of it can be collected, is the interest of said William H. Sheafe in the

Jacob Sheafe farm, are admitted by the default and the taking of the bill *pro confesso* as to him, and proved by the evidence. The statute authorizes this court to make such orders in relation to the property, real or personal, of a husband ordered to pay alimony to the wife, as may be necessary to carry the decree for alimony into full effect, and to protect the rights of the wife. Rev. Stat., ch. 148, sec. 13 ; Comp. Laws, 379. We are, therefore, clearly of opinion, that, under the provisions of this statute, the plaintiff is entitled to have, and the court are authorized and required, under the circumstances, to make a decree perpetually enjoining said William H. Sheafe from mortgaging or otherwise conveying or alienating his interest in said farm, as against the plaintiff's claim for alimony."

In accordance with these views, a decree was made, setting aside certain conveyances from William H. Sheafe to several of the defendants as fraudulent, and said William H. Sheafe was perpetually enjoined against conveying or otherwise alienating his interest in the Jacob Sheafe farm, to the prejudice of the plaintiff's claim for alimony, and her legal rights under the levy of the Waldron execution.

Upon the filing of the bill, an injunction had been issued by the present chief justice, restraining William H. Sheafe and all the other defendants from conveying, or aiding and assisting in conveying or otherwise disposing of said William II. Sheafe's interest in the Jacob Sheafe farm, &c., during the pendency of the bill, and this injunction was duly served upon Charles C. Sheafe and Albert R. Hatch, two of the defendants. While this injunction was in full force, on the 27th day of June, 1857, after filing their answers to the bill, said C. C. Sheafe and A. R. Hatch severally commenced suits at law against William H. Sheafe on demands due to them respectively, and attached all said William H. Sheafe's interest in the Jacob Sheafe farm. Having obtained judgments and executions in those suits after the decision in

this case, at the adjourned term in March last, they seek to satisfy them by a levy upon that interest. The amount of the executions is more than equal to the value of William H. Sheafe's interest in the farm, so that if they are permitted to levy them upon it, there will be nothing left for the plaintiff, and she will be utterly without remedy for the recovery of any portion of the alimony due and to become due to her under the decree of the Superior Court.

It seems to us entirely clear, both upon reason and authority, that C. C. Sheafe and A. R. Hatch cannot be permitted to defeat the plaintiff's claim upon the property of William H. Sheafe for payment of the alimony due her, in such a way, without being allowed substantially to violate not only the injunction, but the solemn decree of this court heretofore made. The injunction restraining William H. Sheafe and these defendants from conveying, and aiding or assisting in conveying, or in any way alienating, said William H. Sheafe's interest in the Jacob Sheafe farm, in spirit and principle, as clearly and effectually prohibited the defendants from procuring an alienation of his interest in that farm by proceedings at law, as by a mortgage or other conveyance thereof. So far as the object of the bill and injunction were concerned, it would be as utterly and completely defeated by suffering these defendants to attach and hold that interest, as by allowing him to convey it to any third person. The injunction, therefore, in forbidding William H. Sheafe to convey, and these defendants to aid or assist him in conveying his interest in that farm, pending the suit, clearly implied and must be understood as prohibiting the defendants from doing any thing, in any way, whereby the title of said William H. Sheafe to said farm should be alienated or divested out of him during the pendency of that suit. It would be absurd to hold, that while the defendants were prohibited from aiding said William H. Sheafe directly to

divest himself of his property in the farm, they might indirectly, by means of legal proceedings against him in their own favor, accomplish effectually that very result.

So, too, we think it quite evident that the decree of this court, promulgated last March in the suit to which said C. C. Sheafe and A. R. Hatch were themselves parties, perpetually enjoining William H. Sheafe from mortgaging or otherwise conveying or alienating his interest in the farm, as against the plaintiff's rights acquired under the Waldron execution, and her claim for alimony under the decree of the Superior Court, must be understood to have given the plaintiff an equitable lien upon that interest to the extent of that execution, and that claim for alimony, at least as against these defendants; and that they were thereby as effectually prohibited from procuring, by process of law or otherwise, the alienation of said William H. Sheafe's interest in that farm to themselves, as if they had been thereby perpetually enjoined against procuring such a result. Any other construction of the injunction and decree, it seems to us, would, under the circumstances of the case, make both the merest nullities imaginable. It would be a foul reproach, if the defendants, who were parties to and cognizant of the whole proceedings, were able completely to nullify not only the injunction of the court, but its solemn decree, restraining William H. Sheafe from alienating his interest in the farm, by themselves effecting such alienation, by means of proceedings instituted and carried to perfection under the authority of the court itself.

Among other authorities, the following seem to us fully to sustain the views we have taken : *Parker* v. *Kelly*, 10 S. & M. 184; *Ross* v. *Classman*, 3 Sandf. 676; *Winn & Ross* v. *Albert*, 2 Md. Ch. Dec. 42; *Albert* v. *Winn & Ross*, 7 Gill 446; *Ellicott* v. *U. S. Ins. Co.*, 7 Gill 307; *Little* v. *Price*, 1 Md. Ch. Dec. 182; *Fowler* v. *Farnsworth*,

1 Swant. 1 ; *Kershaw* v. *Thompson*, 4 Johns. Ch. 609 ; *West* v. *Belcher*, 5 Munf. 187.

As the original action is still pending, let the decree therein be so modified as to give the plaintiff a lien upon William H. Sheafe's interest in the farm, for the payment of the alimony due and to become due to her, according to the decree of the Superior Court ; and let C. C. Sheafe and A. R. Hatch be perpetually enjoined from levying their executions upon, or in any way interfering with, William H. Sheafe's interest in the Jacob Sheafe farm, as against a valid levy of the Waldron execution thereon, and the plaintiff's lien thereon for the payment of alimony as aforesaid.