not relieve him from responsibility for the failure to deliver them alive, if the loss arose from causes not within the risks from which the plaintiffs had agreed to relieve the defendant.

The agents of the defendant, it appears by the report, offered to cary the dead stock through if one of the plaintiffs, who accompanied the train and was present at the accident, would take charge of them. The plaintiffs refused to take charge of, or to have anything to do with the dead and dying animals. The plaintiffs have no claim to recover on the ground so urged by their counsel.

The judgment should be reversed, and a new trial had before the same referee, the costs to abide the event.

------◆◆------

## NEW YORK COMMON PLEAS.

HUGH SMITH AND JOHN KERR agt. THE NEW YORK CONSOLIDATED STAGE CO., AND AUGUSTUS SCHELL.

Where an action is brought to annul and set aside an *assignment made for the benefit of creditors*, as illegal and void, and an *injunction* is issued and served upon the defendants, including the assignors and their assignee, commanding the assignee, his agents, servants, attorneys and all persons acting under him, to refrain and desist from disturbing, holding possession of, or interfering in any manner with the property and effects of the assignors, or any part or portion of the same, it is a violation of the injunction and a contempt of the court, for the assignee thereafter to bring actions against the plaintiffs and others to collect choses in action belonging to the assignors.

*Special Term, January,* 1865.

MOTION by plaintiffs for enforcement of proceedings as for contempt, in the violation of an injunction order.

A. R. LAWRENCE, JR., and HAMILTON W. ROBINSON, *for plaintiffs.*

CHARLES A. RAPALLO and WILLIAM F. ALLEN, *for defendants.*

CARDOZO, J.   The defendant Schell, does not deny bring-ing the suits against the plaintiffs and others, which are complained of as being a violation of the injunction in this case.   If bringing those suits were a breach of the injunc-tion, it is clear that even if the power of the court be lim-ited by the provisions of the Revised Statutes respecting proceedings as for contempts, to enforce and protect the rights of parties in civil actions, which I by no means con-cede, it was misconduct on his part by which the rights or remedies of plaintiffs have been " impaired, impeded or prejudiced."   The plaintiffs had a right, and that was part of the object of this action, to prevent any meddling with the property of the New York Consolidated Stage Com-pany, by a person not legally authorized to have the cus-tody of or to interfere with it, and it will be difficult to see why they are not impeded and prejudiced, when one having no right attempts in violation of the order of the court to interfere with it.   It was an attempt to do the very thing which the court has decided the plaintiffs had the right to prevent the defendant Schell from doing, and it is the merest sophistry to say that the plaintiffs' rights and remedies have not been impaired, impeded or preju-diced, when that which the court decides the plaintiffs are entitled to prevent the defendants from doing is done, de-spite the order of the court.   Nor does the fact that it was understood in open court that any proper act for the pre-servation of the line should not be deemed a violation of the injunction, afford any answer or protection.   That stip-ulation was given on the suggestion that the line would have to be stopped, and that the horses would die from want of feed, unless Mr. Schell were allowed to do what was necessary to keep it going, and could not possibly have misled any one.

Were the suits brought by Mr. Schell a violation of the injunction?   A very specious, but I think manifestly un-sound argument has been made on his behalf.   The assign-

ment to Mr. Schell purported to convey all the property of every character of the company. The complaint in this suit sought to annul that assignment. It charged that the assignment was illegal and void; that the directors had no power to make it, and that Mr. Schell had taken possession under it of all the property and effects of the company, and it prayed, among other things, that Mr. Schell might be enjoined and restrained from "in any manner disturbing, holding possession of, or interfering with the property and effects of the New York Consolidated Stage Company, or any part thereof, and that a receiver of said property and effects might be appointed." The order to show cause why an injunction should not issue and a receiver be appointed, which with the summons and complaint, was duly served on Mr. Schell, commanded him "and his agents, servants, attorneys, and all persons acting under him, to refrain and desist from disturbing, holding possession of, or interfering in any manner with the property and effects of the New York Consolidated Stage Company, or any part or portion of the same." It is admitted that the suits complained of were commenced after Mr. Schell had been duly served with the order. It is claimed, and authorities are cited quite unnecessarily to show that the language of an injunction should be plain, and that a party is not to be punished for violating an order which is so ambiguously expressed as to mislead him into the belief that the act complained of was not prohibited. This is undoubtedly the rule—it is only just—and if applicable to the facts here will be acted on. It is said that the subject of the suits brought by Mr. Schell were neither "property" nor "effects," and that therefore the injunction has not been violated. A very natural question arises, and it is this: If they are neither "property" nor "effects," what are they?' The counsel for Mr. Schell said they were "mere choses in action." But "choses in action" are covered

by the term " property," which is a most comprehensive word (see Bouvier's Law Dict. " Property ").

While it is true that an injunction must be so expressed that ordinary people will not be misled, it is equally true that learned persons are not to be permitted to give an unusual, forced and ingenious construction to language, and then plead their learned ingenuity as an excuse for a violation of an order which would have been understood by the most ordinary intellect.  A person astute enough to see the very nice and fine distinction which is made on behalf of Mr. Schell, must have been quite conscious that the words " property and effects," were of a very sweeping and general character, and could not have been ignorant that they included " mere choses in action." Any person of ordinary capacity would have understood that " all the property " of the Consolidated Stage Company meant everything to which that company could have any right, and no one of ordinary mind could have imagined that when ordered to let " everything " alone—not to interfere with it in any manner—he was not ordered to let that part of " everything " alone which was only a " mere chose in action." Mr. Schell cannot be permitted to shield himself by asserting that he misapprehended that which is plain to the meanest understanding. The language of the order is to be understoood according to its ordinary import, and we are not to strive to put upon it by ingenious construction, a meaning different from its natural significance, because of the position which the defendant occupies. It is especially the duty of prominent citizens to obey scrupulously the orders of the court, and they should receive no encouragement in efforts to evade them by shallow pretexts. The administration of the law will become justly contemptible when persons of education, character and position, can escape the consequences of disobedience to the order of the court, by resorting to such refined and artificial attempts

at construction as have been invoked on behalf of the defendant.

A single other remark will exhibit the groundlessness of the defendant's plea. If Mr. Schell supposed that the words " property and effects," contained in the injunction did not include mere " choses in action," how did it happen that he gave a different construction to those words when contained in the assignment ? If they did not cover " choses in action," then he cannot pretend to have any title to the choses in action which he is endeavoring to collect by the suits complained of, and that is a position he will hardly assume. It is very idle for Mr. Schell to say that he understood " all property and effects " one way when he read the assignment, and another way when he read the injunction. It is manifestly an afterthought and a subterfuge. I am, therefore, of opinion that Mr. Schell has clearly violated the injunction, and that the case is within the provisions of the Revised Statutes. But it is sworn that the acts done by Mr. Schell were done under the advice of counsel ; that they were not prohibited by the injunction, and were innocent. While, undoubtedly, advice of counsel will not excuse a violation of an injunction, yet if given in good faith, it is an important element in considering what the judgment of the court should be. If the suggestions which I am about to make are acted upon, the authority of the court will probably have been, after what I have said, sufficiently vindicated to render any further action, except perhaps to determine a question of costs of motion, unnecessary in this case. It is within Mr. Schell's power to undo his violation of the injunction. That must be done. The suits brought in disobedience of the order of the court must be discontinued. I cannot listen for a moment to any other suggestion after having carefully examined and decided, and not having the slightest shadow of a doubt that the assignment to Mr. Schell was utterly void, and when I see that no harm can pos-

sibly accrue by his obeying the order of the court, since it is not pretended that the supposed causes of action are in danger of being barred by the statute of limitations, or that any other reason exists for such great haste. If the order made be right, and the alleged causes of action exist, the receiver is the only proper person to bring and prosecute the suits. There is not the slightest reason to apprehend any mismanagement of or damage to a trust confided to the gentleman who has been made the receiver in this matter. Beyond this he is under the immediate supervision and control of the court, and certainly a person who it has been decided has no interest in the premises, cannot be permitted to dictate to or interfere with him. A little less haste on the part of Mr. Schell, in a matter in which no especial occasion for speed has been disclosed, would have saved the necessity of the present motion, and even if he be right in claiming that the assignment is valid, a little loss of time, very unimportant when compared with upholding the dignity of the court, will be the only detriment which can arise from his discontinuing the suits in question, and obeying the order " not in any manner to interfere " with the property or effects of the New York Consolidated Stage Company. If within two days after notice of this opinion (which notice may be given by a letter to defendant's attorney, apprising him that my opinion herein has been filed), Mr. Schell causes the suits brought in violation of the injunction to be discontinued, and presents to me an affidavit of the fact within the same time (a copy of which, with notice of the time and place, when and where it will be handed to me, must be served on the attorney for the plaintiffs in this action), probably, except to dispose of the question of the costs of this motion, I shall feel that all has been done which is necessary to vindicate the majesty of the law. If this suggestion be disregarded, I will make such order as I think the circumstances demand.