The People of the State of New York, Appellant, v. William J. H. Ballard et al., Respondents.

Under the provisions of the Code of Civil Procedure, in relation to the "judicial supervision of a corporation, and of the officers and members thereof," an action may be brought by the attorney-general in the name of the people, without a relator, against a domestic business corporation and its trustees to remove the latter from their position, for misconduct, and to compel them to account for and pay over to the corporation the value of property belonging to it transferred by them to others in violation of their duty, whenever he deems that the action can be maintained and that the interests of the public will be promoted thereby. (§§ 1781, 1782.)

The question as to whether the public interests require the bringing of such an action is committed by the statute to the absolute discretion of the attorney-general, and may not be made the subject of inquiry by the court on trial of the action. (Brown and Landon, JJ., dissenting.)

A corporation cannot cease to exist of its own will; its life continues until either the charter period has expired or the court has decreed a dissolution.

A business corporation, therefore, cannot sell all of its property to a foreign corporation, organized through its procurement with a majority of non-resident trustees, for the purpose of taking its place and its assets and carrying on its business; as this is a practical dissolution of the corporation.

While the stockholders who assented to such an unlawful disposition of the corporate property may be estopped thereby, those not assenting are not bound, and the state may demand that those of the officers of the corporation who did the wrong shall make restitution. (BROWN and LANDON, JJ., dissenting.)

The fact that the trustees in making the transfer acted in good faith does not validate it, and the fact that there may be difficulty in the final adjustment of rights because some of the stockholders assented, constitutes no defense to the action.

*It seems* the liability of the trustees to account may be limited to those stockholders who have not assented to the transfer.

The history of legislation in this state in reference to the supervision ·of corporations given.

*People* v. *Ballard* (56 Hun, 125) reversed.

(Argued January 13, 1891; reargument ordered June 9, 1891, and case remitted to· second division for reargument. Reargued May 31, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 14, 1890, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought, in the name of the people without a relator, against a domestic business corporation and its trustees, to compel the latter to account for their official conduct in the management and disposition of its property ; to require them to pay over to it the value of all property acquired by themselves, transferred to others, lost or wasted by a violation of duty on their part, and to remove each of them from his position as trustee of the company.

The facts, so far as material, appear in the opinion.

*J. Langdon Ward* for appellant.

*Treadwell Cleveland* for respondents.

Vann, J.    In 1880, the Spring Valley Hydraulic Gold Company was organized as a corporation under the General Manufacturing Act of this state, and shortly thereafter it invested substantially all its capital in certain mines in the state of California, and until the year 1886 operated the same as its sole business.    The object for which it was formed, as stated in the certificate of incorporation, was to carry on the business of mining various precious ores and to smelt, refine and sell the product.

In July, 1886, the defendant trustees transferred all its property, both real and personal, including said mines, to a corporation organized at the time under the laws of the state of California, for the purpose of carrying on the business theretofore conducted by the defendant company and of taking title to its assets.    This was done with the approval of stockholders holding a majority of the stock, in good faith, to save the property from sacrifice, but without the consent of the holders of a large number of shares and against the protest of some of the stockholders.    The sole consideration for such transfer was an agreement by the California company to pay the debts of the New York company and to issue to it certain shares of its capital stock.    A majority of the directors of the former company were, and still are, residents of California, and the only object of the transaction was, without a dissolution, to reorganize the defendant company under the laws of another state in order to obtain some real or supposed advantage afforded thereby.    The attorney-general commenced this action to remove the trustees and to compel them to account for the property thus transferred, but the Special Term dismissed the complaint because no one was joined as a relator and the General Term affirmed the judgment, one of its learned justices dissenting.

This appeal presents two questions of grave importance:

1. Whether an action for the judicial supervision of a business corporation, its officers and members, can be maintained by the attorney-general in the name of the people without a

relator ?   (*People* v. *Lowe*, 47 Hun, 577; *People* v. *Bruff*, 9 Abb. [N. C.] 153.)

2. Whether a corporation created by the laws of this state can be reorganized under the laws of another state without the process of lawful dissolution.

The first question has been twice considered, but never decided by this court.   In the *People* v. *Lowe* (117 N. Y. 175, 190), the present learned chief judge of the court, after a thorough and able discussion of the subject, reached the conclusion that the people have no right to maintain such an action, but, as a majority of the court were unable to agree with him in that conclusion, the judgment was reversed upon another ground.   The question was again considered by the court in the very case now before us and an opinion, unfortunately not published, because it is exhaustive in research and persuasive in reasoning, was prepared, sustaining the right of the people to sue without a relator, but, as one of the members of the court was the attorney-general who commenced the action, only six judges could act, and they were equally divided upon the question, so that no judgment was rendered.*

---

* The opinion referred to is that of PECKHAM, J.   As its publication is desired by the second division, with the consent of the judges of the Court of Appeals, I insert it here as a note.— [REP.

PECKHAM, J.   The complaint in this case alleges an illegal transfer by its trustees of all of the property of the Spring Valley Hydraulic Gold Company, a New York corporation, to a California corporation called the Spring Valley Gold Company, and it alleges that by reason of such transfer the property of the corporation has been wasted and lost to the stockholders.   It sets forth some other alleged illegal agreements, but the transfer to the California corporation is the chief ground of complaint. The relief demanded is that the individual defendants, who were the trustees of such company and made the transfer, be compelled to account for the disposition of the property of the company committed to their charge, and that they be compelled to pay to the company whatever money and the value of whatever property they have acquired to themselves, or transferred to others, or lost, or wasted by a violation of their duties, and that each of them be removed from his office as trustee of said company, and for such other relief, etc.   Answers on the part of the defendants were put in and issue joined upon many of the allegations of the complaint.   The case came to a hearing at Special Term, and the court, after

Opinion of the Court, per VANN, J.

The case was subsequently certified to this division of the
court for decision, and after hearing a reargument and giving
the subject the most careful attention, we also are divided in
opinion and are unable to pronounce judgment except by the
vote of a majority. The duty of giving expression to the
views of those who think that the action can be maintained as
brought, necessarily involves, to a great extent, the adoption
of positions already taken and arguments already made in
previous discussions of the question.

hearing the case, dismissed the complaint, with costs. There is no sub-
stantial contest as to the facts, and from the evidence, I should think there
could be very little as to the entire good faith of the defendants' trustees
in making the transfer of the property for the consideration they obtained.
But the complaint alleged that the transfer was illegal, and that in law
the trustee defendants were liable to account, and so the question of good
faith may not be an answer to that allegation. The learned court at
Special Term dismissed the complaint on the ground that the action could
not be maintained by the attorney-general in the name of the people, as
no legal interest in the subject-matter of the litigation on the part of the
plaintiff was shown by the complaint. The General Term affirmed the
judgment, and upon substantially the same ground taken at the Special
Term. The opinions of the learned judges at Special and General Terms
are certainly exceedingly able presentations of the views taken by the
respective courts, and nothing but what seems to me the inexorable com-
mand of the statute could prevail against them. We may here assume
that upon general principles of equity, unaided by any statutory enact-
ment, the people could not maintain this action, and that assuming the
transfer of the property to have been illegal, the people show no right to
set it aside, or to compel the trustees to account, outside of that which
may be found in the statutes of our state.

In *Attorney-General* v. *Utica Ins. Co.* (2 Johns. Ch. 371), which is the
leading case in our state upon the subject of the original jurisdiction of
chancery over corporations and the trustees or directors thereof, and which
was decided in 1817, Chancellor KENT held that chancery was without
jurisdiction to restrain individuals from carrying on a banking business in
violation of a statute, and the motion of the attorney-general on an
information filed by him *ex-officio*, for an injunction for such purpose was
denied. He stated that if the defendant in that case had exercised bank-
ing powers, if such powers were not given it by charter, the people, by
their attorney-general, had a complete and adequate remedy at law, either
by the common-law writ of quo warranto, or by an information in the
nature of such writ. This is all that was decided in that case. In the
course of his opinion, the learned chancellor proceeded to state what he

As early as 1817 it was held by Chancellor KENT (*Atty.-Genl.* v. *Utica Insurance Co.*, 2 Johns. Ch. 371), that the Court of Chancery, upon motion of the attorney-general, had no power to restrain an insurance company from carrying on a banking business, even if it was in violation of a public statute. After reviewing all the authorities, which at that early date were exclusively English, the conclusion was reached that, as there was an adequate remedy at law by quo warranto, the Court of Chancery had no jurisdiction to supervise the conduct

---

thought the general powers of the court over which he presided were in regard to corporations, whether at the suit of the attorney-general or of private parties. He concurred in the views of Lord Chancellor ELDON, as explained by him in *Mayor* v. *Lowten* (1 Vesey & Beames, 226), that no trust attached by which to give chancery jurisdiction to prevent the alienation by a corporation of its lands, upon the ground of a misapplication of funds, except in the case of corporations holding to charitable uses. In the above cited case, ELDON, Lord Chancellor, expressed a doubt as to the jurisdiction of chancery in a case of the application of funds or property of the corporation to purposes clearly not corporate. The distinction seems to have been on the question whether alienation were simply illegal or committed with a fraudulent misapplication of the trust funds. If no fraud were present and the alienation were simply for a non-corporate purpose, Lord ELDON would or did not say that his court had jurisdiction in such a case. He cited the case in the King's Bench of *The King* v. *Watton* (2 Durn. & E. 199), and said it must be regarded as the opinion of the whole Court of King's Bench, that in such a case the Court of Chancery had jurisdiction. Chancellor KENT in the *Utica Ins. Co.* case also discussed the power of visitation by the Court of Chancery of this state and he was rather of the opinion that such power over corporations did not exist in the state court in the English sense of that power, as emanating from the royal prerogative and founded on discretion. "I should rather conclude," he says, "that under the constitutional administration of justice in this state, all corporations of whatever name or description, were amenable to the Supreme Court and to that court only, according to the course of the common law, for non-user or misuser of their franchises. But, at the same time, I admit that the persons who, from time to time exercise the corporate powers, may, in their character of trustees, be accountable to this court for a fraudulent breach of trust; and to this plain and ordinary head of equity, the jurisdiction of this court over corporations ought to be confined. Thus, for instance, if the directors of the Utica Insurance Company were to appropriate the funds or capital of the company to their own private emolument; or if, disregarding the business of insurance, they were to divert the funds to the destruc-

of corporations, unless it was in the case of charitable corpo-
rations, which were regarded as of sufficient public concern to
warrant interference by a court of equity. The only question
discussed was the jurisdiction of the court to entertain such
an action at all, and no attention was given to the form of
procedure. It was not even claimed by the eminent counsel
who took part in the argument of that case but what, if the
court had jurisdiction of the subject of the action, it could
proceed at the instance of the attorney-general, without a

tion of that object by making roads or canals, or building theatres or
churches, I have no doubt this court would have a right, and would be
bound, to interfere and check the abuse. But when the question is
whether a corporation has forfeited its charter, or has usurped a franchise,
or has broken a penal law, the case is widely different; this court is not
the proper tribunal to sustain the prosecution or to inflict the punishment."

In the case of a private eleemosynary lay corporation, where the founder
had appointed no special visitor, the right of visitation in default of heirs
of the founder devolved upon the king to be exercised by the great seal.
(*The King* v. *Masters, etc.*, 4 Durn. & E. 233.)

But whether in chancery or the King's Bench, in the case of a corpora-
tion holding to charitable uses the visitatorial power was that of the king,
in the absence of a special visitor, and it was exercised sometimes on appli-
cation of the attorney-general without a relator, or an information was
filed by him *ex officio*, and a relator was added, and sometimes by man-
damus on like information. (See *Rex* v. *Gregory*, in note to *King* v. *The
Masters, etc.*, 4 Durn. & E. 233, at 240.) There was some division of opinion
in relation to this class of corporations as to which court was the proper
tribunal to grant the relief sought in the particular case, but the relief was
frequently asked for by the attorney-general acting as attorney for the
king, and sometimes with and sometimes without a relator. (*Atty.-Genl.*
v. *Mayor of Dublin*, 1 Bligh W. S. 312, 337, 347; *Atty.-Genl.* v. *Brown*,
1 Swan, 265, note pp. 305, 306; *Atty.-Genl.* v. *Bucknall*, 2 Atk. 328; *Atty.-
Genl.* v. *Oglender*, 1 Ves., Jr., 246; Cooper's Pl. 106, 107; *Atty.-Genl.* v.
*Powel*, 1 Dick. 355.)

The relator was joined in many cases for the simple purpose of securing
to the defendants their costs in case the bill should be dismissed, and the
presence of a relator was in no way necessary to the maintenance of the
prosecution or information. (Cases above cited.) Charitable uses were
thus regarded as matters of public concern, although in many cases in
addition to the right of the attorney-general to ask for their enforcement
by the courts, performance without his intervention would sometimes be
decreed at the instance of a town or parish, or of its inhabitants, or of an
individual of the class intended to be benefited, such as one of the poor of

relator. (Page 374.) In none of the cases cited by the
chancellor did the court refuse to proceed because the attorney-
general came into court alone and represented the interests of
the public only. While there was doubt in the minds of some
of the judges whether Chancery or the King's Bench was the
proper tribunal to supervise the conduct of charitable corpo-
rations, there seems to have been no doubt that such jurisdiction,
wherever it resided, could be exercised upon motion of the
attorney-general, either with or without a relator. (*Attorney-*

---

the parish, or one of the sick or maimed individuals for whom the charity
was intended.

The extent of the jurisdiction of our Court of Chancery in these matters
was somewhat doubtful so far as regarded corporations. The extract
which I have taken from the opinion of Chancellor KENT would seem to
show the jurisdiction of chancery to have been quite narrow in regard to
corporations and their trustees.

It was under these limitations that the Court of Chancery remained, as
was assumed, until the adoption of our Revised Statutes.

The subject of the jurisdiction of chancery over corporations was treated
in those statutes, and in regard to the matters under discussion, provision
was made for the exercise by chancery of jurisdiction in the cases therein
mentioned. By section 31 of the 2d R. S. 462, upon a bill filed in chan-
cery by the attorney-general, the chancellor was given power to restrain
by injunction any corporation from assuming, etc., any franchise not
allowed by its charter, and the chancellor could in the same manner enjoin
any individuals from exercising any corporate rights, etc., not granted to
them. The revisers in their notes said that the proceedings at law by quo
warranto or scire facias, were so dilatory that a summary remedy was
necessary, and it was given by the section already cited, because of the
decision of Chancellor KENT in the case of the *Attorney-General* v. *Utica
Ins. Co.*, which held that the Court of Chancery in this state did not
possess such jurisdiction.

Then by section 33 of 2d R. S. 462, chancery was invested with juris-
diction over directors, managers and other trustees and officers of corpora-
tions in many cases, which are specified under eight different subdivisions
of such section. By those subdivisions, among other things, power was
given to the chancellor to compel directors to account for their official
conduct in the management and disposition of the funds and property
committed to their charge and to compel payment by them to the corpora-
tion of all sums of money and the value of all property which they might
have acquired or transferred by a violation of their duties. Also the
power was given to suspend or remove the trustees for gross misconduct,
and to order new elections, and to set aside alienations of property

*General* v. *Bucknall,* 2 Atk. 328; *King* v. *Masters of St. Catherine's Hall,* 4 Durn. & East. 233, and note A. on page 240; *Attorney-General* v. *Brown,* 1 Swan. 265; *Attorney-General* v. *Oglender,* 1 Ves. Jr. 246.) The only object of joining a relator at all seems to have been to provide security for the costs of the defendant. (*Attorney-General* v. *Green,* 2 Brown, 496; Redesdale's Ch. Pl. 79.)

The revisers had in mind the decision in the *Utica Insurance* case (*supra*), when they reported that part of the Revised

---

contrary to law or for purposes foreign to the lawful business of the corporation, and to prevent such alienation where there was reason to apprehend it.

This section in its subdivisions greatly enlarged the power of chancery regarding directors of corporations over what it was said to have been in the *Utica Ins. Co.* case. The thirty-fifth section then proceeds to state that the jurisdiction thus conferred should be exercised "at the instance of the attorney-general, prosecuting in behalf of the people of this state, or at the instance of any creditor of such corporation, or at the instance of any director, trustee or other officer of such corporation having a general superintendence of its concerns." Reading sections 33 and 35 together and construing them according to the ordinary meaning of language, who can reasonably doubt that the attorney-general is invested with the power to invoke the jurisdiction of chancery in any of the cases mentioned in the thirty-third section?

The statute declares it in so many words and without condition or qualification. The question of parties was a vital one, and that distinct question was treated of and provided for in the thirty-fifth section.

Both sections were the work of most eminent lawyers who carefully weighed their words and the meaning thereof, and they were engaged in clothing the Court of Chancery with powers until then not possessed by it, and in providing for the parties at whose instance those powers were to be exercised. It is scarcely conceivable that under such circumstances and by such men a section should be produced which, by the ordinary construction of its language, leaves out a most vital and material condition upon which the attorney-general may bring the action in the name of the people of the state; that condition being that when the proceeding is instituted to compel an accounting by trustees or to prevent their alienation of the property of the corporation, the bill or petition must show some pecuniary interest on the part of the people with regard to the property or funds of the corporation alleged to have been, or to be in danger of being, illegally or improperly lost, wasted or transferred by the directors or officers of the corporation, or else that the corporation must be a public one, or clothed with public duties. The question of the proper

Statutes relating to " proceedings by and against corporations
and public bodies having certain corporate powers, and by and
against officers representing them," the thirty-first section of
which is as follows : " Upon a bill being filed by the attorney-
general in the Court of Chancery, the chancellor shall have
power to restrain by injunction any corporation from assuming
or exercising any franchise, liberty or privilege, or transacting
any business not allowed by the charter of such corporation ;
and in the same manner, to restrain any individuals from exer-

parties in such cases cannot but have been present to the minds of those
learned lawyers who were the real authors of the Revised Statutes, and if
they had intended that the attorney-general should not bring an action or
institute a proceeding under the 33d section of the statute in cases relat-
ing to property, unless the state had a pecuniary interest in it, or the cor-
poration were a public one, undoubtedly they would not have left it to be
a matter of conjecture to be painfully spelled out from unreliable sur-
rounding circumstances against the otherwise plain meaning of the statute.

A resort to the notes of the revisers leaves the case, as it seems to me,
still perfectly clear. They say in regard to the 33d and 35th sections
that they were drawn to supply what they considered to be important
defects in some cases, and to remove doubts entertained respecting the
power of the court in others. The first subdivision, they said, of section
33, which authorized the court to compel the directors of a corporation to
account for their official conduct in the management and disposition of
the funds and property committed to their charge, was intended, in con-
nection with section 35, to give the Court of Chancery in this state the
same power that is exercised by that court in England in cases of chari-
table corporations, and in other cases, the possession of which power is
doubted by Chancellor KENT in the *Utica Ins. Co.* case. The power exer-
cised by the Court of Chancery in England in cases of charitable corpo-
rations, we have seen, was frequently exercised at the instance of the
attorney-general on an information filed by him, and either with or with-
out a relator.

It seems to me the plain language of the note by the revisers means to
authorize the Court of Chancery to exercise, in regard to corporations
created within this state, the same power which is exercised by that court
in England in cases of charitable as well as other corporations, and that
the language of the statute does, as matter of fact, clothe the court with
the powers therein enumerated, and provides that they may be exercised
in all such cases at the instance of the attorney-general as well as of a
creditor or director.

To say that the statute permits the attorney-general to prosecute in
behalf of the people regarding an illegal transfer of property, etc., only

Opinion of the Court, per VANN, J.

cising any corporate rights, privileges or franchises not granted to them by any law of this state." (2 R. S. 462, § 31.) To this section the revisers appended the following note : " The proceedings at law by quo warranto or scire facias are so dilatory that much mischief will generally be done before judgment can be obtained, and are so expensive that a summary remedy seems absolutely necessary. Chancellor KENT held in 2 Johnson's Chancery Reports, 391, that the court did not possess the power proposed to be given in the preceding section."

---

in the cases of charitable or municipal corporations, is to import a condition into the statute which is not therein expressed, and is to fly in the face of its plain language, and is in brief judicial legislation. Such legislation may be good in itself, but it is difficult to sustain in opposition to a statute making contrary provisions.

. In 1870, by chap. 151, § 2 of the laws of that year, it was enacted that no officer or director of a corporation or joint-stock association should be suspended or removed from office other than by the judgment of the court in a civil action in the cases prescribed by the Revised Statutes, and such an action having the object of suspension or removal in view was to be brought only by the attorney-general in the name of the people.

The fifth section of that act excepted corporations organized under the general manufacturing laws of the state from its provisions. The legislature thus, in the case of a large number of private corporations, restricted actions brought under the Revised Statutes to suspend or remove a director, to those which should be brought in the name of the people and by the attorney-general. The act narrows the right to bring such actions as given by the Revised Statutes, and places the power exclusively in the hands of the attorney-general. It shows a legislative policy towards placing certain powers exclusively in the hands of a public officer, and to be exercised by him in the interests of justice.

The provisions of the Code of Civil Procedure as to the jurisdiction of the court are substantially those of the Revised Statutes. The Code provides for the maintenance of an action against one or more trustees, etc., for the purposes enumerated in six subdivisions of section 1781. Subdivisions 3 and 4 relate to the suspension or removal of a trustee or director from office. Section 1782 provides that "an action may be brought as prescribed in the last section by the attorney-general in behalf of the people of the state; or except where the action is brought for the purpose specified in subdivision third or fourth of that section, by a creditor of the corporation, or by a trustee, director, manager or other officer of the corporation having a general superintendence of its concerns."

Section 1811 provides that a trustee, etc., of a corporation shall not be

It is clear that the object of the legislature in enacting this section with this official explanation before them was to enlarge the power of the Court of Chancery in relation to proceedings against corporations.  This is made even more apparent by the specific provisions of section 33, which is as follows: "The chancellor shall have jurisdiction over directors, managers and other trustees and officers of corporations.  1. To compel them to account for their official conduct in the management and disposition of the funds and property committed to their

suspended or removed from office by a court or judge otherwise than by the final judgment of a competent court, in an action brought by the attorney-general, as prescribed in section 1781.  This section enlarges the provisions of the act of 1870, already alluded to, by omitting the exception therein contained and making the prohibition applicable to all corporations.

In the courts below this case seems to have been regarded as one which in any event might have been commenced in the name of a director, etc., of the corporation.  But this depends upon the question whether the action was brought, as prescribed in section 1781, for the suspension or removal from office of the trustees of the corporation.  The complaint alleges a fraudulent transfer of the property of the corporation by the trustees, defendants, to a foreign corporation.  It asks that they be compelled to account for their conduct and compelled to pay the company the amount of the property transferred, wasted or lost by a violation of their duties, and that they, and each of them, be removed from their offices as trustees, and for such other relief, etc.

It is seen that the complaint does, in so many words, state a cause for the removal of the trustees, by alleging a fraudulent transfer by them of the property of the corporation.  It also asks for their removal from office.  It does not, however, ask that the court order a new election, and the complaint shows that the action is not brought solely to obtain the removal of the trustees, but in connection with such removal it asks that they be compelled to account and pay over, as already stated.  It does not seem to me that it is necessary, in order to maintain an action for a removal of a trustee, that it should be brought solely for that purpose.  The statute does not so state, and I know of no reason why such condition should be inserted by the courts.  Nor does it seem necessary, that in order to maintain the action to suspend or remove a trustee, the complaint should contain the prayer for judgment, directing a new election to supply the vacancy created by the removal.

That power is vested in the court and it can grant such a direction when it makes the removal without a special prayer to that effect being contained in the complaint.

Opinion of the Court, per Vann, J.

charge.   2. To decree and compel payment by them to the corporation whom they represent, and to its creditors, of all sums of money, and of the value of all property which they may have acquired to themselves or transferred to others, or may have lost or wasted by any violation of their duties as such trustees.   3. To suspend any such trustee or officer from exercising his office whenever it shall appear that he has abused his trust.   4. To remove any such trustee or officer from his office upon proof or conviction of gross misconduct.   5. To

If there are facts alleged and proved sufficient to call for the removal of a trustee, whether an election shall be ordered is a matter for the court to determine upon a consideration of all the facts in the case.   If all were removed, then by virtue of the power  vested in the  court by section 1781 it could direct the removal to be reported to the governor in order that he might fill the vacancies.   The right to exercise this power would not depend upon the question whether the complaint contained a prayer asking for that specific relief.   In this view the action so far as the removal of the trustee is concerned, could only be brought by the attorney-general.

Section 1808 provides that when the attorney-general has good reason to believe that an action can be maintained in behalf of the people as prescribed in article second, third, or fourth (which includes section 1781), he must bring an action accordingly, or apply to a competent court for leave to bring an action, as the case requires; if in his opinion the public interests require that an action should be brought.   The rest of the section requires that in a case where an action can be brought only by the attorney-general in behalf of the people, if a creditor, stockholder, etc., of the corporation applies to the attorney-general for that purpose and furnishes the security required by law, the attorney-general must bring the action or apply for leave to bring it, if he has good reason to believe that it may be maintained.   Where such an application can be made section 1986 applies to the action to be brought.   That section provides that the complaint must allege, and the title of the action must show that it was brought upon the relation of some person having an interest in the question, and in such case the attorney-general must demand security, and when it is given him he is entitled to compensation for his services, to be paid by the relator in like manner as the attorney or counsel for a private person.

The effect of section 1808, is as it seems to me to permit the attorney-general to bring an action in those cases where only the attorney-general can bring it, where he has good reason to believe that it can be maintained, provided that in his opinion the public interests require that such an action be brought.

Sickels — Vol. LXXXIX.      36

direct new elections to be held by the body or board duly authorized for that purpose to supply vacancies created by such removal.  6. In case there be no such body or board, or all the members of such board be removed, then to report the same to the governor, who shall be authorized, with the consent of the senate, to fill such vacancies.  7. To set aside all alienations of property made by the trustees or other officers of any corporation contrary to the provisions of law, or for purposes foreign to the lawful business and objects of such

In such case he need join no relator with the people, but his belief that the public interests require such an action to be brought is reason enough to bring it, provided he thinks it can be maintained.  But in a case where he only can bring the action, if he be of the opinion that the public interests do not require it to be brought, he must nevertheless still bring it if he have good reason to believe it can be maintained, provided a creditor, stockholder, director or trustee of the corporation applies to him for that purpose and furnishes the security required by law.

The fact that the attorney-general, in a case where he alone can bring the action, does so in the name of the people without joining a relator, is conclusive that in his estimation he had good reason to believe he could maintain the action and that the public interests required he should bring it.  In such case no relator is necessary.

In any event, whether this action be one which the attorney-general can alone bring, or whether it be one which a creditor or director of the corporation could also bring, I see no escape from the language of the statute investing the attorney-general with power to bring any action for the purposes named in section 1781, in the name of the people, even in cases where the people have no pecuniary interest in the property and where the corporation is of neither a public nor a *quasi* public character.

I think the legislature, by adopting the Code of Civil Procedure and by sections 1781 and 1782, has substantially enacted the rule prevailing under the Revised Statutes, but it has done so in language even more plain and definite, in reference to the right of the attorney-general to bring an action, than is that of the Revised Statutes.  Indeed, the policy of the state seems to have been changed by the Revised Statutes and to have been made still plainer by the act of 1870 already cited and by the passage of the Code of Civil Procedure.  That policy seems to be of a nature to extend the right of interference by the attorney-general to those cases which heretofore no one would have regarded as being of a class in which the people had the smallest right or interest.

Such, for instance, are the cases of interference by the attorney-general under the provisions of special statutes with the general conduct of receivers of all insolvent corporations, no matter how private.  He may

corporation in cases where the person receiving such aliena-
tion knew the purpose for which the same was made; and
8. To restrain and prevent any such alienation in cases where
it may be threatened, or there may be good reason to appre-
hend it will be made."

The revisers, in their note to this section, say that it was
" drawn to supply what are conceived to be important defects
in some cases, and to remove doubts entertained respecting the
power of the court in others. ' The first subdivision is intended,

now at any time he deems it for the interest of stockholders, creditors,
policyholders, etc., make a motion, in the case of any insolvent corpora-
tion, for an order removing a receiver and compelling him to account, and
appointing another, and for such additional orders as may seem to the
attorney-general proper to facilitate the closing up of the receivership.

This was the provision of the act of 1882, chapter 331, and by its third
section the provisions of such act were limited to actions and special pro-
ceedings theretofore instituted by the attorney-general and to such as
should be thereafter instituted by him. This limitation was, however,
omitted in the same kind of an act passed the following year (Chap. 378,
Laws of 1883, § 7). By the same act it was made necessary to serve on
the attorney-general a copy of all motion papers and a copy of any other
applications to the court in every action or proceeding for the dissolution
of any corporation or a distribution of its assets and no receiver of a cor-
poration was permitted to pay any person any money directed to be paid
by any order or judgment made in any action until a certified copy of
such order or judgment had been served upon the attorney-general. It is
to be supposed that the attorney-general could appeal from such orders as
were made upon notice to him and which could not be made without such
notice, and where he appeared and opposed the granting of them. It
seems to be the policy of the state to assume a certain amount of super-
vision over the affairs of all corporations and the officers thereof, created
under its laws, no matter whether such corporations be public or private,
and regardless of the question whether the state as such has any pecuniary
interest in the matter of property or assets involved in the subject. The
corporation is the creature of the state; it exists only by virtue of its per-
mission and it is subject in many things to its will, and the officers thereof
are elected to enable the corporation to perform the duties for which it
was created. These facts may have had some effect in forming that policy
of the state which seems now to be in the ascendant.

The general rule, of course, still prevails that a plaintiff must show
some interest in the controversy which he asks the court to decide. But
where a statute expressly authorizes the people by their attorney-general
to sue in certain named cases, such suit may be maintained in those cases,

in connection with section 35, to give to the Court of Chancery in this state the same power that is exercised by that court in England in cases of charitable corporations, and in other cases, the possession of which power is doubted by Chancellor KENT in 2 Johnson's Chancery Reports, 384, although alleged to be a part of the general jurisdiction of the court in 2 Term Reporter, 199."

This legislation was doubtless induced by said decision of the chancellor, and as he gave prominence to the supposed defect

even though the plaintiffs fail to show such an interest in the controversy as would enable them to maintain it were it not for the provisions of the statute.

The cases cited by the counsel for the respondents are of a nature which depended upon the people showing some interest in the controversy, the same as an ordinary plaintiff who sued without the benefit of any statute giving him a right of action. It is true the case of *People* v. *Albany & Susquehanna Railroad Co.* (57 N. Y. 161), was brought under the statute permitting an action in the name of the people in the nature of quo warranto, and it was held to have been properly brought for that purpose. But the plaintiffs joined with such action several causes of action of an equitable nature in regard to which the people had no interest, and for which they had not been authorized by any statute to sue, and the court held that, in regard to such causes of action, the people, like any other plaintiff, must show some interest therein, or they could not maintain the action, and as they showed no such interest their claim for relief on those grounds could not be upheld. The judgment was reversed and a new trial ordered of the issue as to the title to office of the antagonistic boards of directors, and that issue was to be tried by a jury. None of the cases cited by counsel or by the courts below is of the class where the plaintiff is authorized by statute to sue for the purposes mentioned in the complaint.

By section 1804 of the Code, articles second, third and fourth of that title do not apply to the corporations mentioned in such section, but the corporations excepted do not embrace corporations of the character of the defendant corporation in this action.

We agree with Mr. Justice DANIELS, in his dissenting opinion at General Term in this case, that the transfer of all the property by the trustees of the defendant corporation to the California corporation was illegal, and for the reasons he states and upon the authorities he cites.

We also agree with that learned judge in the opinion that the liability of the trustees to account is limited to those stockholders who have not assented to the transfer. In such an action the people are really, for the purpose of compelling an account, the representatives of the non-assenting shareholders only.

Opinion of the Court, per VANN, J.

in the power of the court, so the legislature gave prominence
to that subject in enacting the statute, but the method of
exercising the power is made clear by section 35 in the follow-
ing language : " The jurisdiction conferred by the preceding
thirty-third section shall be exercised as in ordinary cases on
bill or petition, as the case may require, or the chancellor may
direct at the instance of the attorney-general prosecuting in
behalf of the people of this state, or at the instance of any
creditor of such corporation, or at the instance of any director,

The trustees are to account for their official conduct in the management
and disposition of the funds and property committed to their charge, and
they can be compelled to pay to the corporation which they represent, or
to its creditors, any money and the value of any property which they have
acquired to themselves, or transferred to others, or lost, or wasted by a
violation of their duties. If there be no creditors, the account they must
render is for the benefit of the shareholders who did not assent to such
transfer. Nominally, the account is to the corporation, but in reality it is
as I have said, where there are no creditors, to the non-assenting share-
holders. I think there is no radical difficulty in so limiting the accounting
in such an action as this. The assent of a shareholder estops him from
claiming the account, and the people having no interest in the controversy
other than as a representative for those who did not assent, would be
bound by the estoppel to the same extent that the assenting shareholders
would be in case the action were brought by a non-assenting director or
officer. In the latter case, the assenting shareholders would not be parties,
but the trustees would have the right to show upon the accounting just
what number of shareholders did assent, and what amount of shares they
held, and as to that proportion of the stock the judgment would provide
for the proper deduction to be made.

The same difficulty which is spoken of by the judge delivering the pre-
vailing opinion at General Term, would exist in case the action were
brought by a non-assenting director or officer.

Could the court compel, in that action, the trustees to pay only a pro-
portionate sum to the corporation for the use and benefit of the non-assent-
ing shareholders ? If not, then the form of the action would have no
effect so far as that feature of the case is concerned. If it could, I see no
difficulty in making such a provision in the case where the action is
brought by the people representing only the same interests which in the
other case would be represented by the non-assenting director or officer.
If there be an estoppel in one case, there would be in the other. These
questions are not now properly before us further than to express a gen-
eral opinion upon the way in which an accounting should be ordered and
proceeded with. Upon on accounting, if one should be entered upon,

trustee or other officer of such corporation having a general superintendence of its concerns."

Thus, as it seems to us, the legislature intended to greatly increase the power of the Court of Chancery in regard to the supervision of corporations, and to authorize the attorney-general, on his own motion, to call upon the court to act. The revisers intended, as we gather their meaning from the language used, that the Court of Chancery, in this state, should have the same power in regard to corporations generally that

these questions might arise, and their proper solution would be matter for careful consideration as they should be presented. We can only say that the form of the action does not alter its essential nature so far as an accounting is concerned which shall affect property in which the shareholders have an interest and where the people have none. Of course, where the action is brought for relief in those cases where the people alone can sue, other questions would arise concerning such interests as were not private or were not of a pecuniary nature.

The general conclusion which we have reached is based upon what we conceive to be the plain language and intent of the statute. The policy of the legislature seems to provide for such a suit as this in the name of the people. As to whether that policy be good or bad is not for this court to determine. It is true that cases of this character have ever since the adoption of the Revised Statutes been almost uniformly brought by parties interested in the property wasted or illegally transferred, and it is comparatively a new departure for an action such as this (excluding the claim to remove the trustees), to be brought by the attorney-general. It is not at all plain how any public interest can be affected by the action of the trustees in transferring the property to the California corporation under the circumstances, and for the consideration detailed in the evidence and found by the court. Of course the facts were not presented in this light to the attorney-general when he was asked to commence the action, and he would have now the same right to discontinue it which is possessed by a private plaintiff.

We think it not inappropriate to say that in coming to the conclusion to bring an action of this nature in the name of the people in those cases where the parties interested could themselves bring it, the attorney-general ought to be fully convinced and entirely clear that the public interests demand that the action should be brought in the people's name. Where the corporation is a purely private manufacturing, trading or other business corporation, the case would, as we think, have to be a most extraordinary one to warrant the attorney-general, in the interests of the public, in bringing an action to set aside alleged illegal transfers of property in which the people had no interest and a recovery in which would benefit

is exercised by that court in England in the case of charitable corporations.   We cannot unite with the learned justice who decided the case at Special Term, in the opinion that it was intended to limit the jurisdiction conferred to those cases in which it was exercised by the English court.   The statute contains no words of limitation, but in plain terms confers upon the chancellor the powers enumerated, and provides that they shall be exercised at the instance of the attorney-general.   If the revisers had intended to limit those powers to a single class of corporations, would not so important a limitation have appeared in the statute itself rather than in a note?   But, it is asked, if this power really existed, why was it not exercised by some attorney-general during the long period that these provisions of the Revised Statutes were in force?   The contemporary construction of a statute is always valuable, because it involves the judgment and understanding of those conversant with the law at the time the statute was passed.   This, however, means such construction by contemporaries as indicates actual user of the statute.   Mere negative construction, inferred from non-user for many years, is of little value, especially when the only person capable of calling the statute into action is a high officer of the state, with multifarious duties and cares. As the statute conferred the same power of acting under it upon creditors and others that it did upon the attorney-general, it may be that that officer left parties to their own resources or

only those who claimed to own the property or some part, or portion, or interest therein.

In *People* v. *Lowe* (117 N. Y. 175), Earl, J., in a very strong opinion, has said all that can be said in favor of the view that the people have no right to maintain such an action as this, regarding it simply as an action to compel an accounting in a private corporation for property in which the people have no interest.   But a majority of the court did not then concur in those views and the case was decided upon another and perfectly satisfactory ground to the whole court.

For the reasons alleged in the foregoing opinion we are compelled to the conclusion that the learned courts erred in holding that the plaintiffs could not maintain this action on the ground of a lack of interest in the subject matter thereof, and the judgment must, therefore, be reversed and a new trial ordered, with costs to abide the event.

that parties preferred to act for themselves so that they could control the proceedings.

The next legislation upon the subject, after the Revised Statutes, appeared in the Code of Procedure, which provided that an action might be brought by the attorney-general in the name of the people in various cases. Such actions were in the place of writs of scire facias and quo warranto and of proceedings by information in the nature of quo warranto. (Code of Procedure, §§ 428–447.)

These provisions have but little bearing upon the question under consideration, except as they reflect the general policy of the state in allowing the attorney-general to interfere with the affairs of corporate bodies without a relator " in every case of public interest" and with a relator "in every other case in which satisfactory security shall be given." (Code of Pro. § 430.)

Attention is also called to an act passed in 1870 " to regulate proceedings against corporations by injunction and otherwise," which provided that "all actions and proceedings against a corporation, when the relief sought or which can be granted therein, shall be the dissolution of such corporation *or the removal or suspension of any officer or director thereof*, shall be brought by the attorney-general in the name of the people of the state." (Laws 1870, chap. 151, § 2.)

In 1874 two cases were decided by this court holding that, under the peculiar circumstances therein appearing, the state could not sue in its name of sovereignty without some specific interest in the subject of the action. (*People* v. *A. & S. R. R. Co.*, 57 N. Y. 161; *People* v. *Ingersoll*, 58 id. 1.)

These cases are said to have led to the passage of chapter 49 of the Laws of 1875, which conferred upon the people the right to sue without a specific interest and authorized the attorney-general to prosecute such actions in their name.

We have thus reviewed the law as it stood prior to the enactment of the Code of Civil Procedure, in order to learn the history of legislation and judicial decision, together with the general policy of the state upon the subject, so that the

statute under which this action was commenced might be the more easily understood. That history, if we read it aright, shows a progressive tendency on the part of the state towards the supervision, through its courts and attorney-general, of the corporations which it brought into existence by keeping them within the lines of the law.

Title 2 of chapter 15 of the Code of Civil Procedure treats of "actions relating to a corporation" and the second article is entitled the "judicial supervision of a corporation and of the officers and members thereof." This action was brought under sections 1781 and 1782, which appear in the article headed by that significant title. Section 1781 is a re-enactment, in substantially the same language, of section 33, already quoted from the Revised Statutes. (2 R. S. [1st ed.] p. 462.) In plain terms it confers jurisdiction upon the court over the subject-matter of such an action as this, leaving it to the next section, to prescribe by whom the action is to be brought in the following language : "An action may be brought, as prescribed in the last section, by the attorney-general in behalf of the people of the state, or, except where the action is brought for the purpose specified in subdivision third or fourth of that section, by a creditor of the corporation, or by a trustee, director, manager or other officer of the corporation having a general superintendence of its concerns." (Code Civ. Pro. § 1782.) The excepted subdivisions relate to the suspension or removal of a defendant from office. To this section the commissioners attached the following note : "2 R. S. 462, § 35, amended as required by the changes of the judicial system and forms of proceeding and by Laws 1870, chap. 151, § 2." Thus section 35, already quoted from the Revised Statutes, is pointed out as the basis of the section reported; amended, however, as required by the act of 1870, so as to provide that all actions in which a part of the relief sought is the suspension or removal from office of any officer or director of a corporation, "shall be brought by the attorney-general in the name of the people of the state." (Laws 1870, chap. 151, § 2.) This is an action of that character. Section 1786 applies only to actions to dissolve a cor-

poration, and sections 1797 and 1798 to actions to vacate or annul the charter of a corporation. No such relief is sought in the action before us. Section 1804 excepts religious, educational, municipal and some other corporations from the operation of the act. Section 1808 provides that "where the attorney-general has good reason to believe that an action," such as the one under consideration," can be maintained in behalf of the people of the state * * * he must bring an action accordingly, * * * if, in his opinion, the public interests require that an action should be brought. In a case where the action can be brought only by the attorney-general in behalf of the people, if a creditor, stockholder, director or trustee * * * applies to the attorney-general for that purpose and furnishes the security required by law, the attorney-general must bring the action, or apply for leave to bring it, if he has good reason to believe that it can be maintained."

This section provides for two classes of actions, each of which requires two facts to exist before the action can be brought, but only one of which is common to both. Each class requires that the attorney-general should have good reason to believe that the action can be maintained. In addition to that the first class requires that he should be of the opinion that the public interests demand that an action should be brought, and the second class, that one of the persons named should apply to him to bring the action and furnish the security required by law. It is not enough to warrant the commencement of either action for the attorney-general to be satisfied that it can be maintained, for, in the one case he must also be satisfied that the public interests require him to act, and in the other, one of the designated persons must ask him to act and give security. In the first class no security is required, and in the second the public interests need not be consulted, but simply private interests. If a relator were required in the first class, the attorney-general might not be able to procure one, and hence could not obey the command of the statute. If a relator were not required in the second class, costs might be thrown upon the people in litigation in which the

public had no concern. This construction is confirmed by the commissioners' note to said section, in which they say : " New, as respects an action brought under article 2 or article 3, but corresponding to Code of Procedure, section 430, *last sentence*, as respects an action substituted for the proceedings by quo warranto. It will often happen, and, indeed, has happened, that the attorney-general, who, alone, under sections 2 and 5 of the act of 1870, can bring some of the actions provided for in articles 2 and 3, declines to interfere on the ground that no public interests are jeopardized by the transactions complained of. In such a case the aggrieved parties were remediless, until the enactment of this section. No sufficient reason is apparent why the rule established by Code of Procedure, section 430, should not apply to such cases."

We have now examined all the sections of the Code to which our attention has been called, except 1811, which provides that a director or other officer of a corporation cannot be removed otherwise than by final judgment in an action brought by the attorney-general. This section, also, had its origin in chapter 151 of the Laws of 1870, as the commissioners state in their note thereto. Section 1986 has no bearing, because it is limited to title 1 of chapter 16, which relates to a different subject, except where a creditor applies to the attorney-general to sue under section 1808, when a relator is to be joined if the application is granted and the action commenced.

Considering the history of the law upon the subject, the origin, object and language of the statute, we think that the legislature intended to authorize the attorney-general to bring such an action as this whenever he was convinced not only that it could be maintained, but also that the interests of the public would be promoted thereby. We appreciate the force of the argument that it is contrary to the prevailing rule to permit an action to be brought in the name of one who has no direct interest in the result. This, however, bears upon the question of construction only, for what the legislature has authorized may lawfully be done, in the absence of some

restriction in the Constitution. But, while the people have no pecuniary interest in the result, have they no interests that need protection? Corporations for various purposes are created by the state. They exist only by virtue of its will. Their interests are vast, their assets enormous, their powers extensive, and their action affects the welfare of every citizen. When they act within the law, they serve a useful purpose and promote the common good. When they act in violation of law, their great power affords a practical protection which the average citizen cannot command. Has the state no interest in supervising the conduct of its creatures to whom it has confided such great power? In a broad and political sense, has it no interest in requiring the managers of corporations to observe their charters and not abuse their powers? Has it no interest to prevent, by the deterrent effect of example in a flagrant case of wrong, similar violations of law by those managing other corporations? May not the legislature have thought that sound public policy required not only remedies for the redress of private wrongs to be enforced at the instance of those injured, but also the direct interference by the state whenever, according to the sound judgment of a discreet and conservative public officer, it was necessary in order to arrest a growing evil? These questions, we think, suggest an answer to the argument founded on the supposed improbability that the legislature would depart from the usual rule of requiring a direct interest to support an action. No such interest was regarded as necessary in order to annul a charter, dissolve a corporation, remove a receiver or oust a usurper. With great deference to the learned judges who have reached a different conclusion and whose opinions have caused us to hesitate long and anxiously before pronouncing judgment, we think that this action, if otherwise well founded, can be maintained by the attorney-general in the name of the people alone.

The suggestion is made that while an action may be brought by the attorney-general in the name of the people without a relator, still it is for the court to decide whether the public interests, in fact, required the action to be so brought, and if it

decides that they did not so require, that the complaint should be dismissed on that ground. The interest of the public, according to this construction, would be an issuable fact. A comparison of section 1781, which provides for the substance, with section 1808, which provides for the form, shows, as we think, that such was not the intention of the legislature. The attorney-general is to bring the action if he has good reason to believe that it can be maintained, and "if in *his* opinion," not in the opinion of the court, the public interests require that it should be brought. While the former section is to govern the action of the court in granting relief, the latter is to govern the action of the attorney-general in deciding to ask for relief, and is addressed to his conscience only. The sole responsibility of suing in the name of the people rests upon him. That subject is wholly in his keeping as the representative of the public interests. If it were held otherwise, upon what evidence could the court proceed? If, for instance, the attorney-general, upon learning that serious abuse of power by the trustees of corporations was so common as, in his judgment, to amount to a public evil, should decide to interpose the power of the state for the sake of a wholesome example, could the court take evidence as to the mass of wrongful acts upon which he relied in deciding to bring the action? If so, would not the defendants have the right to show that each act was innocent and not wrongful? Would not this lead to an intolerable multiplication of issues? Could those issues be defined by pleadings? Unless so defined, could the defendants be prepared for trial?

We think that the question as to what the public interests require is committed to the absolute discretion of the attorney-general, and that it cannot be made the subject of inquiry by the courts. If he abuses the great power intrusted to him, a remedy may be found in his removal from office, or in the election of a successor worthy of the high position.

The statute authorizes an action to remove the trustees of a corporation for misconduct; to compel them to account for their official acts in managing and disposing of the property committed to their charge, and to require them to pay to the

corporation, or its creditors, the value of any property trans-
ferred in violation of their duties. (Code of Civ. Pro. § 1781.)

A corporation is purely artificial, having no natural or inhe-
rent power, but only such as its charter confers. The charter
of the corporation in question was the statute under which it
was organized. Upon filing the certificate of incorporation it
came into existence with power to do only that which is
expressly or impliedly authorized by the statute. It had no
power to act except through its trustees, who were authorized
to manage its " stock, property and concerns," and a majority
of whom were required to be citizens of this state. (Laws of
1848, chap. 40, as amended by Laws of 1869, chap. 269.)
While they were authorized to conduct its affairs, they were
not authorized to terminate its existence, although, under
special circumstances, the courts could dissolve it upon their
application. (Code of Civ. Pro. § 2419.) A corporation can-
not cease to exist of its own will. Its life continues until
either the charter period has expired or the court has decreed
a dissolution. The law made it and the law only can put an
end to it. As it cannot take its own life directly, it cannot do
so indirectly, for that would be a fraud upon the law and
against public policy. By the transaction complained of the
defendant company was stripped of all its property, and thus
prevented from going on in business and deprived of all
means of carrying into effect the object of its existence.
While a corporation may sell its property to pay debts, or to
carry on its business, it cannot sell its property in order to
deprive itself of existence. It cannot sell all its property to a
foreign corporation organized through its procurement, with a
majority of non-resident trustees, for the express purpose of
stepping into its shoes, taking all its assets and carrying on its
business. That would be the practical destruction of the cor-
poration by its own act, which the law will not tolerate.
Whether the process by which it was sought to convert the
New York corporation into a California corporation is called
reorganization, consolidation or amalgamation, it was the exer-
cise of a power not delegated and was void. It was corporate

burial in New York for resurrection in California.    While the stockholders who consented may be estopped by their acts, those who did not consent can take advantage of this violation of their rights, and the state of New York can demand that those who did the wrong shall make restitution.

The case of *Abbott* v. *American Hard Rubber Company* (33 Barb. 578), is the leading authority upon the subject in this state, and it is also recognized as the leading authority in most of the states.    In that case a majority of the trustees of a business corporation, without the consent of some of the stockholders, transferred all its personal property, which was especially adapted to its business, to two persons, who forthwith caused another corporation to be formed, and transferred such property to it.    It was held that, as such transfer practically terminated the corporation by taking from it the power to fulfill the object of its organization, it was a violation of that object, was not within the power of the trustees, and was hence void as *ultra vires*.    The case was elaborately considered both at General and Special Term. and we regard it as a sound and valuable authority.

A somewhat similar question was under consideration in *Frothingham* v. *Barney* (6 Hun, 366), where the court said : " This, as a business arrangement, was wise, discreet and sagacious.    As such it should be sustained if it legally is possible. The interests of one or two small stockholders should not enable them to work the destruction of the interests of co-owners, or compel the purchase of their stock at fictitious or unreal prices, if it can be avoided.    \*    \*    \*    Upon the dissolution of the association, it became the duty of the trustees to convert the assets into money and distribute the proceeds among the stockholders.    To a certain extent this has been done.    A portion of such assets have not been distributed, and another portion, including the good will of the old association, has been exchanged by the trustees for the corporate stock of a new Wells, Fargo & Co.    This, as I understand, the trustees had no right to do.    They had no right to exchange the assets of the old association for the corporate stock of any corporation

without the consent of all the stockholders. (*Mann* v. *Butler*, 2 Barb. Ch. 362.) Equally were they without authority in making this partial exchange without such consent. Stockholders of the old association could not thus, against their will, be forced into relations with the new company. (*Blatchford* v. *Ross*, 54 Barb. 42 · *H. & N. H. R. R. Co.* v. *Croswell*, 5 Hill, 383, 386.)"

In *Taylor* v. *Earle* (8 Hun, 1), a New York corporation, by the vote of a large majority of its stockholders, sold all its' property, except cash on hand, mills and franchises, to a Vermont corporation and took in payment shares of stock in the latter company. The court said: "The whole scheme of the transfer and its execution was illegal. There is no power given by the acts under which the Burlington Cotton Mills (the New York corporation) were incorporated to transfer all its property and thus terminate its existence, and take in payment stock in a company carrying on the same business with a different name, charter and stockholders, and being a foreign corporation. The corporation, by the New York law, could increase or diminish its stock, or extend its business to other objects, but that falls far short, I think, of the sweeping power exercised on this occasion. The sale was not real. It was a mere form to turn a New York corporation into a Vermont one, and thus escape the scrutiny into the affairs of the company permitted by the New York law to the stockholders."

All the authorities in this state are uniform in holding that the trustees of a corporation cannot so dispose of its property as to virtually end its existence and prevent it from carrying on the business for which it was incorporated. (*Blatchford* v. *Ross*, 54 Barb. 42 ; *Copeland* v. *Citizens' Gas Light Co.*, 61 id. 60 ; *Smith* v. *N. Y. Consolidated Stage Co.*, 18 Abb. Pr. 419 ; *Metropolitan El. Ry. Co.* v. *Manhattan Ry. Co.*, 14 Abb. [N. C.] 303 ; *Hartford, etc., R. R. Co.* v. *Croswell*, 5 Hill, 383.)

Other courts of the highest standing have laid down the same rule. (*Railway Co.* v. *Allerton*, 85 U. S. 233 ; *Stevens* v. *Rutland, etc., R. R. Co.*, 29 Vt. 545 ; *New Orleans, etc.*,

*R. R. Co.* v. *Harris*, 27 Miss. 517 ; see, also, Morawetz on Corporations, § 413 ; Spelling on Corporations, § 1012 ; Cook on Stock and Corporation Law, § 667 ; Beach on Corporations, §§ 358, 430.)

The fact that the trustees acted in good faith did not empower them to do an illegal act ; and the fact that there may be some difficulty in the final adjustment of rights, because some of the stockholders consented, while others did not, constitutes no defense to the action. We see no greater difficulty, however, than would exist if the action were brought by a trustee who had not consented to the act complained of, and no reason why " the liability of the trustees to account" should not be " limited to those stockholders who have not assented to the transfer."

We think that the transfer was unauthorized and void as to the non-assenting stockholders, and as to the state, and that the people can maintain the action in their name of sovereignty.

The judgment should, therefore, be reversed and a new trial granted, with costs to abide event.

LANDON, J. (dissenting). The learned trial judge, after finding the facts in detail, found as a conclusion of law as follows : " There is no evidence in this action of a public grievance, and the people, having no interest in the subject-matter of the action, or in any of the acts herein complained of, cannot maintain this action."

It is clear from the complaint and from the detailed findings of fact, that the grievance sought to be redressed is a private and not a public one. It is equally clear that the people have no interest in the subject-matter of the action, or in any of the acts complained of, except in the sense that the people, as a body politic, always have an interest in promoting obedience to the laws and the performance of legal duties and obligations. But this public interest is the political and moral one attaching to sovereignty, and is widely differenced from a private and special interest in particular things. The conclusion of the learned trial judge, that the people as a body politic cannot

maintain this action, would seem to follow as the necessary result of the absence both of a public grievance and of a private and special interest. A suitor, who has no substantial interest in the litigation he institutes, cannot be injured by the dismissal of his suit.

But the learned counsel for the appellants contend that the people can maintain this action, because, and only because, the language of the statute permits it. (Code of Civil Pro. §§ 1781, 1782, 1808, 1976.) The historical review of the law upon the subject is presented in the learned opinions of Judges Peckham and Vann in the case at bar, and in the opinion of Judge Earl in *People* v. *Lowe* (117 N. Y. 175, 190). This review shows that, but for the statute, the action in cases not affecting the public interests could not be maintained by the people without a relator. The question, therefore, is whether the statutes have removed this objection.

This review, I think, also clearly shows that the reasons moving to the enactment of the statutes enlarging the chancery power of supervision of corporations, and the intention of the statutes themselves, were the protection and promotion of interests public in their character. Chancellor Kent, in *Atty.- Genl.* v. *Utica Ins. Co.* (2 Johns. Ch. 371), the case which led to the provisions of the Revised Statutes upon the subject, admitted that stockholders, aggrieved by the fraudulent breach of trust by the trustees, could resort to equity in default of an adequate remedy at law. They did not need the statutes for their protection.

Fully concurring in the views expressed by Earl, J., in *People* v. *Lowe*, I venture to add a few suggestions which seem to me to support the conclusion that in this case, under a reasonable construction of the statutes, the complaint was properly dismissed.

This corporation was created to conduct private business, and it conducted no other. Some of the stockholders seem to have conceived that by reason of the management of the trustees, not strictly authorized by the letter of the law, a technical cause of action accrued against them in favor of such

stockholders. The findings of fact by the learned trial judge are to the effect that the action of the trustees was beneficial to all the stockholders. It is not denied that the laws afford ample remedies to these stockholders, or any of them, for whatever relief they can prove themselves entitled to. Under such circumstances, why should the government, without a responsible relator, champion one side of this strictly private controversy, and oppress the other by the weight of its influence and power? Is it reasonable to suppose that the legislature, by the statutes in question, intended to authorize such governmental intervention? Does not a sound public policy require that whatever exclusively pertains to individual interest should be left to the individual? That the state should provide and care for the general interests, and for those which are beyond the reach of the individual? Is it not true that to the extent that such individual can, with safety to all the rest, be permitted freedom to manage his own affairs, governmental intervention is both unnecessary and inexpedient? Is not governmental paternalism to be cautiously guarded, lest it subvert the just rights and liberties of the individual?

Is there any good reason why the individual should call upon the sovereign for help, when the sovereign has afforded him ample methods and liberty to help himself?

I concede that it is within the legislative power, in the absence of constitutional restriction, to provide for governmental intervention in private affairs; and also that cases exist in which private affairs are so connected with the public interests that the government may wisely interfere and regulate them. It may also be conceded that the tendency of the cruder efforts at legislation is to enlarge the field of governmental intervention so as to embrace many subjects which it were better to leave to individual control.

Bearing these suggestions in mind, it is submitted that, in the construction of the statutes in question, it is reasonable to presume, in the absence of controlling language to the contrary, that the legislature did not intend to extend the direct and voluntary intervention of the government to the champion-

ship of the cause of one party against the other in a strictly private controversy over their respective interests as affected by the management of a private corporate enterprise.

The statutes are as follows (Code of Civ. Pro. § 1781): " An action may be maintained against one or more trustees, directors, managers, or other officers of a corporation, to procure a judgment for the following purposes, or so much thereof as the case requires : ' 1. Compelling the defendants to account for their official misconduct in the management and disposition of the funds and property committed to their charge.    2. Compelling them to pay to the corporation which they represent, or to its creditors, any money, and the value of any property which they have acquired to themselves, or transferred to others, or lost or wasted by a violation of their duties.    *    *    *

" ' 4. Removing a defendant from his office upon proof or conviction of misconduct and directing a new election to be held by the body or board duly authorized to hold the same, in order to supply the vacancy created by the removal; or where there is no such body or board, or where all the members thereof are removed, directing the removal to be reported to the governor, who may, with the advice and consent of the senate, fill the vacancies.' "

§ 1782. " An action may be brought, as prescribed in the last section, by the attorney-general in behalf of the people of the state ; or except where the action is brought for the purposes specified in subdivisions third or fourth of that section, by a creditor of the corporation, or by a trustee, director, manager, or other officer of the corporation, having a general superintendence of its concerns."

§ 1808. " Where the attorney-general has good reason to believe that an action can be maintained in behalf of the people of the state, as prescribed in article second, third or fourth of this title, except section 1797 of this act, he must bring an action accordingly, or apply to a competent court for leave to bring an action as the case requires, if in his opinion the public interests require that an action should be brought.

In a case where the action can be brought only by the attorney-general in behalf of the people, if a creditor, stockholder, director or trustee of the corporation applies to the attorney-general for that purpose and furnishes the security required by law, the attorney-general must bring the action or apply for leave to bring it, if he has good reason to believe that it can be maintained. Where such an application is made, section 1986 of this act applies thereto, and to the action brought in pursuance thereof."

§ 1986. "Where an action is brought by the attorney-general, as prescribed in this title on the relation or information of a person having an interest in the question, the complaint must allege, and the title of the action must show, that the action is brought upon the relation of that person. In such a case, the attorney-general must, as a condition of bringing the action, require the relator to give satisfactory security to indemnify the people against the costs and expenses thereof. Where security is so given, the attorney-general is entitled to compensation for his services, to be paid by the relator in like manner as the attorney and counsel for a private person."

I think the sections in question authorized the attorney-general to bring this action; that is to say, the people as a body politic or corporate, having a capacity to sue, authority was thereby conferred upon the attorney-general to make them a party plaintiff in this action, if, as was no doubt the case, in his opinion the public interests required the action to be brought.

But this amounts to nothing more than that the people may rightfully claim their day in court upon the alleged cause of action they present.

It is for the court to decide whether they present and establish a good cause of action. Section 1808 clearly implies that the attorney-general may not thus bring the action unless in his opinion the public interests do require it. If the legislature did not intend that the action should be brought unless in the opinion of the attorney-general the public interests should require it, it is clear that they did not intend that it

should be sustained except in furtherance of the same interests.

Evidence tending to show such interests thus becomes essential to a recovery. It will not be contended that the opinion of the attorney-general is of any further force than to show that he did not exceed his authority in using the name of the people as a party plaintiff.

If, in fact, the people have no public interests to promote by bringing the action, the mistaken opinion of the attorney-general to the contrary will not reverse the situation and cure the material defect. He can, in fact, have no opinion as to the public interests involved if there are none. It hence results that the sections in question may be construed to authorize a recovery in an action of this nature brought in the name of the people without a relator, where it appears or is established upon the trial that the public interests are thereby to be protected, or in some substantial way promoted, apart from the mere private relief to be awarded to individuals, and failing in this, that the action fails.

In *People* v. *Lowe*, EARL, J., said that municipal, religious and eleemosynary corporations " which are public and discharge functions which might otherwise devolve upon the government " may become subject to chancery visitation. If, for instance, the trustees of an incorporated charitable institution, endowed by benevolent persons long since dead, should squander its funds, or divert them to purposes foreign to the charity, it might well be that if the state should not interpose no redress could be had.

The learned judge also suggested that *quasi* public corporations, like railroad, banking and insurance companies, might be subject, when the exigency should require it, to the like visitation. A life insurance company, holding millions for the benefit of policyholders, may be plundered by its trustees, or the rights of the policyholders jeopardized by unauthorized investments. The policyholders may have such an interest as would justify their intervention, but their interests in the aggregate rise to a *quasi* public character.

A corporation is vested with the franchise of supplying a city with pure and wholesome water, and has the means and facilities for the purpose, but its trustees misapply its funds and thus disable it from rendering the proper service. So, too, a strictly private corporation may, by the application of its funds to purposes not contemplated by its charter, create a public nuisance or establish a monopoly injurious to the public interests, or, as in the case cited from 2 Johns. Ch., which was present to the minds of the revisers, an insurance company may carry on the business of banking without the statutory regulations which safeguard the public interests in cases of banking corporations. In all such cases the direct interposition of the attorney-general may be necessary and proper. It is reasonable to suppose that the statutes were intended to enable that officer to seek the aid of the court in redressing the public grievances suggested, and others of similar character. It will still remain for the court to decide as to the sufficiency of the alleged cause of action. The contrast between the grievances suggested and the private ones in the case before us is obvious. The statutes can be given their proper remedial effect without resorting to a construction authorizing the attorney-general to intrude upon strictly private rights.

The statutes are framed to provide respectively the public remedy as it may be needed, and the private remedy upon the relation of the private suitor in cases where it may be properly extended. It is easy to avoid confounding the one with the other ; and if it is true that the letter of the statute authorizes the attorney-general of his own motion to engross both remedies, such is not the intent of the statutes, and, therefore, not within their authorization.

The rule is well settled that statutes should receive a sensible construction, such as will effectuate the legislative intention, and avoid an unjust or absurd conclusion. This rule is strikingly illustrated and applied in the recent case of the *Holy Trinity Church* v. *United States* (143 U. S. 457). An act of congress made it unlawful for any person or corporation to

assist or encourage the migration of any alien or foreigner into the United States under any contract or agreement, made previous to such migration, that such alien or foreigner should perform "labor or service of any kind" in the United States. The Holy Trinity Church, a religious corporation, did first make a contract with an alien residing in England to migrate to New York and there enter its service as rector and pastor, and in pursuance of the contract the migration was accomplished and the service entered upon. The court conceded that the case was within the prohibition of the letter of the statute, but held that it was not within the intention, and, therefore, not within the statute itself. In our own courts, in cases of doubt, this rule of construction has often been resorted to, and not infrequently freedom of inclusion or exclusion of particular cases has been allowed in order that the intention may not wholly fail, or may not be perverted to unjust or absurd results. I cite a few of the many cases. (*Tracy* v. *Troy & Boston R. R. Co.*, 38 N. Y. 433; *Holmes* v. *Carley*, 31 id. 289; *Lake Shore, etc., R. Co.* v. *Roach*, 80 id. 339; *Burch* v. *Newbury*, 10 id. 374; *People* v. *N. Y. Comrs. Taxes*, 95 id. 554; *People* v. *Lacombe*, 99 id. 43; *People* v. *Utica Ins. Co.* 15 Johns. 358.) I think it ought to be applied in this case.

The fact that the removal of the trustees forms, at least, nominally, part of the relief sought, does not of itself warrant a recovery. It should appear that the public interests require their removal.

Argument for making the people sole party plaintiff, deduced from the fact that the corporation is the creation of the government, would be applicable to an intervention upon public grounds. Power given for public purposes is abused when perverted by loaning it to individuals for strictly private purposes.

The language of the Code does not require us to presume that the legislature intended either the favoritism to one individual or the prejudice to the other, which such a loan of power implies, and, without explicit language to that effect, we may safely refrain from imputing such intention.

For these reasons, and especially for those stated in *People* v. *Lowe,* I advise an affirmance of the judgment.

All concur with VANN, J., except BROWN and LANDON, JJ., dissenting.

Judgment reversed.