In the Matter of the Voluntary Dissolution of the MALCOM BREWING COMPANY.

HENRY DOSCHER, Appellant; GEORGE MALCOM and Others, Directors, and C. HENRY OFFERMAN and ALBERT H. F. SEEGER, Temporary Receivers of the MALCOM BREWING COMPANY, Respondents.

*Voluntary dissolution of a brewing corporation — when a sale of the entire properties will not be ordered before the corporation is dissolved.*

In a proceeding for the voluntary dissolution of a brewing corporation the court should not, except for the most cogent reasons, authorize a sale of all the property of the corporation prior to the entry of the final order dissolving the corporation.

Evidence that the liquor tax certificates held by the corporation to secure advances to its customers were constantly depreciating in value and that, if not renewed at the expiration thereof, certain chattel mortgages held by the corporation would also depreciate in value and that the temporary receivers who were authorized to continue the business had not been able to extend the business by making loans to new customers to enable them to fit up their places and obtain licenses, does not constitute a sufficient reason for authorizing a sale of the property of the corporation prior to its dissolution.

HIRSCHBERG, J., dissented.

APPEAL by Henry Doscher from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 2d day of December, 1902, conferring the powers of permanent receivers upon the temporary receivers appointed in the proceeding, and granting leave to said receivers to sell the corporate property of the Malcom Brewing Company.

*Henry F. Cochrane,* for the appellant.

*William H. Hamilton,* for the respondents.

JENKS, J.:

This is an appeal by a creditor and a stockholder from an order of the Special Term, in voluntary proceedings for the dissolution of a corporation, vesting the temporary receivers with all of the estate, real and personal, of the said corporation, and empowering them to sell it at public auction. On July 28, 1902, two orders were made, one appointing a referee and directing that all persons interested should show cause before him on October 30, 1902, why the corporation should not be dissolved ; and the other appointing the temporary receivers and directing that they should continue the business so far as was necessary to prevent loss, waste or sacrifice of the property of the corporation. After the said orders were made, the appellant caused a petition in involuntary bankruptcy to be filed against the corporation in the United States District Court, and thereupon an order was made in that court restraining all further proceedings before the said referee, save to adjourn the hearings, until after an adjudication in the bankruptcy proceedings, or a termination thereof by their dismissal. The order now appealed from was made before the determination of these proceedings in bankruptcy.

This proceeding is purely statutory, and the statute (Code Civ. Pro. § 2419, *et seq.*) must be strictly pursued. (*Matter of Dolgeville El. L. & P. Co.,* 160 N. Y. 500, 502 ; *Matter of Binghamton General El. Co.,* 143 id. 261, 264.) Meanwhile as the corporation lives until the final order of the court decreeing dissolution (*Drew* v. *Longwell,* 81 Hun, 144 ; *People* v. *Ballard,* 134 N. Y. 269, 294), the property of the corporation is in *custodia legis* through the temporary receivers. (*Matter of Lenox Corporation,* 57 App. Div. 519 ; affd., 167 N. Y. 623.) The statute prescribes that the allegations and proofs of the parties must be heard and determined by the court or a referee. And it is only after such hearing and the determination of the court thereupon, made after notice, that the final order of dissolution can be made.

There is specific statutory authority that while the proceedings are pending an order of this character may, in the discretion of the court, be made (Code Civ. Proc. § 2423) so that the question presented is whether the facts shown justify such exercise of discretion. I think that the court, upon an application for such order, should confine its consideration to the reasons given, which would then justify the order, and that it should not base its decision upon a forecast of the outcome of the proceedings, because it would thereby, in effect, substitute its determination of a material issue upon affidavits for a decision, which the statute requires must be reached after a hearing by the court or a referee. This kind of practice is condemned in *Brush* v. *Jay* (113 N. Y. 482). The effect of this order is the same as that which would follow the final order for dissolution made after a trial, and it should not be granted as to property non-perishable save under the most cogent circumstances. It is not a complete answer to urge that even though there is a sale, yet the proceeds thereof are in hand, so that if the corporation be not dissolved, it would have the means wherewith to continue. For there is a manifest difference between a corporation equipped for its business, with a current business, and one divested of all its property save cash on hand available to begin its business life anew. If the court should, for any reason, refuse a dissolution, it is obvious that the corporation should, as far as possible, be unaffected by futile proceedings.

The petitioners state that it will be for the benefit of all parties interested in the assets of the said company to have all the property of the said corporation forthwith sold together as that of a going concern at public auction. It is said that in accordance with the invariable practice of business this company, on or about the first day of May last, caused moneys to be advanced to about $55,000 in all for the purpose of renewing the various liquor licenses issued to its customers; that by way of security for said moneys it received at the time transfers of the various liquor tax certificates; that the said company also holds chattel mortgages covering the fixtures belonging to these various customers to the extent of over $90,000; that the said liquor tax licenses or certificates depreciate in value month by month to the extent of one-twelfth of their original cost; that unless they should be renewed on or before the first day

of May next, and held by the same parties who may hold said chattel mortgages, the latter will become greatly reduced as an asset of the company; that the main purpose of the temporary receivers has necessarily been in the continuance of the company's business, to hold the business and continue it in the condition and to the extent of the same as it existed upon their appointment; that by reason of their restricted powers the receivers have been, and will be, unable to extend the business, which is mainly done by making loans to new customers for the purpose of fitting up new places and procuring licenses for them, or taking over licenses and chattel mortgages on old places held by other businesses, and that if the trade of their present customers, with their accounts, licenses and chattel mortgages, could be transferred, along with the real estate, machinery and all other property of the company as a going concern, the same would bring considerably more if sold at this time than at any later day.    These are all of the reasons submitted.    It may be answered that, of course, the licenses naturally depreciate by one-twelfth as each month of their year's life passes away, and that it is, of course, true that if the licenses be not renewed the value of the chattel mortgages will naturally depreciate, but this is a condition natural to the character of such business by whomsoever conducted.    Nor is there any reason why the property should be sold because the receivers have not been able to extend the business.    Their duty, as prescribed by the very order of their appointment, is to preserve the business in *custodia legis;* they are not placed in charge to extend that business.    Of course, if the accounts, licenses and chattel mortgages could be sold now, they would naturally bring more than at a later period, for the very reason stated by the petitioner, to wit, that the value of the licenses naturally diminishes as their life is shortened.    But no other isolated reason is given why the *property* would bring more presently than it would if sold at a later time.

Of course, the unusual delay in the proceedings may be attributed to the opposition of this appellant, who availed himself of another forum, and that delay may seem to the respondents, who represent the very great majority of the stockholders and the receivers, as capricious and ill-founded, but even so, the present application, so drastic in its character, cannot be decided upon a principle of just

retaliation, but solely upon the considerations heretofore stated. We are apprised in the brief of the learned counsel for the respondents that the very able and learned district judge has decided the proceeding in bankruptcy adversely to the appellant. Even though the appellant may appeal and seek a further stay upon his appeal, yet I think it most unlikely that any court would further stay the proceedings before the referee in the matter of the voluntary dissolution, or, in any event, would do aught but stay distribution of the assets, provided the referee found for a dissolution and the court affirmed his finding by its final order therefor. The period intervening the present time and the first of May should be sufficient for a hearing, a final order and a sale, if such be the result of the determination of the court. If not, or if there be any further let or hindrance, then possibly a case may be presented stronger than the present application.

I recommend that the order be reversed, without costs, and without prejudice to the receivers to renew the motion at any time upon additional facts.

GOODRICH, P. J., BARTLETT and HOOKER, JJ., concurred; HIRSCH-BERG, J., dissented.

Order reversed, without costs.