at the option of the president of the board of education, be revoked and annulled. It appears from the undisputed evidence in the case that the board of education was aware that the plaintiffs were performing their work under a subcontract with Theirault, and that the board made no objection thereto, nor did it ever assume to revoke and annul the contract on any such ground. Therefore, this objection must fail. The time for the completion of the contract expired October 23, 1903. The contract was not completed until April 11, 1904, and under clause M of the contract the contractor was to forfeit and pay to the city the sum of $10 for each and every day consumed in performance beyond the time fixed in the contract, which sum the city was authorized to deduct as liquidated damages for delay from the amount due the contractor. Assuming the city has properly pleaded the delay and consequent damage under this clause of the contract as a defense, yet it appears that the school was occupied at the beginning of the fall term as usual, and continued to be so occupied until the completion of the work, and the city incurred no actual damage by reason of the failure to complete the work within the time specified in the contract. Under such circumstances the claim for liquidated damages as a defense to the foreclosure of this lien cannot be asserted. McKee v. Rapp, supra.

The plaintiffs are entitled to a judgment of foreclosure of their lien and to the payment of the amount thereof, so far as the funds in the possession of the city applicable to the payment of the Theriault contract will satisfy the same, and to a judgment for any deficiency, with costs against the defendant Theriault.

Judgment accordingly.

---

(51 Misc. Rep. 339.)

### PEOPLE v. EQUITABLE LIFE ASSUR. SOCIETY OF THE UNITED STATES et al.

(Supreme Court, Special Term, New York County. August, 1906.)

1. INSURANCE—ACTION AGAINST OFFICERS—NEGLIGENCE—MALFEASANCE.

The Attorney General can, under Code Civ. Proc. §§ 1781, 1782, bring an action against the officers and directors of a life insurance company for losses sustained by their neglect of duty, and also for losses occasioned by official corruption, though the corporation or its receiver might have a remedy at law on the same grounds.

2. SAME.

In an action against the officers of a life insurance company by the Attorney General for misfeasance and malfeasance, where it was alleged that defendants permitted loss by renewing a lease of premises of great value at an inadequate rental, and on disadvantageous terms to another corporation, which was paying large dividends, and that the only asset of such corporation was the lease in question, and the defendants were stockholders in such corporation, there is no presumption that the renewal was compulsory under the terms of a former lease.

3. SAME—PLEADINGS.

In an action against directors of an insurance company for malfeasance in office, allegations that they deposited funds in trust companies of which they were stockholders at a small rate of interest while paying a greater rate on ostensible loans made on credits not to be drawn against, with further allegations that defendants permitted the assets to be wasted, and acquired by themselves and others, was sufficient.

**4. SAME—MISUSE OF JUDGMENT.**

Allegations in action by an Attorney General against officers of life insurance company of a sale of corporate stock having a market value of $600 per share for $210 per share, in a transaction for the personal benefit of some of the defendants, imports a misuse of judgment on the part of such defendants.

**5. SAME—EXCESSIVE SALARIES.**

Allegations in action by an Attorney General against officers of life insurance company of payments of salaries to officers and employés largely in excess of the value of their services when done systematically by permission of defendants, sets forth a waste of assets through misfeasance.

**6. SAME—FAILURE TO DISTRIBUTE PROFITS.**

In an action by an Attorney General of any state against the officers of an insurance company for malfeasance in office, allegations that the officers, with the approval of the directors, failed to distribute to policy holders, the profits to which they were entitled, coupled with a prayer for their distribution, do not constitute a cause of action against the individual defendants, and they are improperly joined as defendants in such action.

**7. SAME—PARTIES.**

In an action by an Attorney General against the directors of a life insurance company, alleging failure of the directors to distribute to policy holders profits in corporation, there is a defect of parties in the nonjoinder of the policy holders, or some representative of them.

Action by the people against the Equitable Life Assurance Society of the United States and others. Demurrers to the complaint overruled.

Julius M. Mayer, Atty. Gen., for the People.

Samuel Untermyer, George H. Wickersham, John G. Milburn, Abraham Benedict, Howard Mansfield, Edward M. Shepard, Geo. Wellwood Murray, Charles P. Howland, Thomas Thacher, Graham Sumner, Lawrence Greer, and F. C. Nicodemus, Jr., for defendants.

BISCHOFF, J. This is an action brought by the Attorney General, in behalf of the people, under sections 1781 and 1782 of the Code of Civil Procedure, to compel an accounting by certain officers and directors of the defendant Equitable Life Assurance Society, "for their official conduct in the management and disposition of the funds and property, committed to their charge" (Code Civ. Proc. § 1781, subd. 1), and to procure a judgment "compelling them to pay to the corporation, which they represent, or to its creditors, any money, and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by a violation of their duties." Id., subd. 2.

The complaint sets forth at length the facts relating to the incorporation of the company, its organization and the personnel of its officers and directors, and alleges, generally, that "the individual defendants herein, disregarding their said duty to said defendant society, and in violation thereof, for a number of years preceding the commencement of this action, have negligently, improperly, and improvidently performed such duties, and habitually and continuously done, or caused or suffered to be done, wrongful, illegal, and improper acts (some of which are hereinafter set forth in detail), by reason whereof the defendant society has suffered great loss and damage, and its funds, assets, and property have been wasted and lost, and much money and property to which it has been and is entitled has been withheld from

it (all to its great damage), and the individual defendants have acquired to themselves, or caused or permitted to be transferred to others, in violation of their duties, money, property, and the value of property belonging to said defendant society." This general characterization of the acts of the individual defendants would not, of course, be of service, standing alone, to tender an issue of fact, and, while it may be read in connection with each specification of alleged misfeasance or malfeasance elsewhere presented by the pleading, the existence of a cause of action must depend upon the facts set forth, not upon the pleader's description of their import.

Eleven paragraphs of the complaint are devoted to a statement of facts concerning transactions of these defendants, in their capacity as officers or directors of the corporation, and, assuming the truth of what is alleged, it is apparent that substantial sums were lost by the corporation in the withholding of profits or advantages which it would have enjoyed had its affairs been conducted, in particular instances, with reasonable care by the officers or directors who had those affairs in charge. In some of the instances detailed by the complaint it is alleged, and the fact is fortified by reasonable inference, that some of these defendants profited by the company's loss, but, in the main, the pleading is to be read as proceeding for misfeasance rather than for malfeasance, and as based upon losses sustained by the company through official neglect rather than through official corruption. If, to support such an action as this, in behalf of the people, the loss to the corporation must be shown to have resulted from an active fraud of its officers, the complaint before me must needs be deemed insufficient as to all but a few of the demurring parties, and the substantial question in the case is whether an action may be maintained by the Attorney General under sections 1781 and 1782 of the Code where the purpose of the action is to charge negligent officers and directors with a loss sustained by the corporation through their misfeasance.

Concededly the action is in equity. The people have no direct pecuniary interest in the result which may be measured by a judgment for a sum of money for the plaintiff, and the judgment sought is one which shall direct the parties who may be chargeable to pay that with which they are charged, not to the plaintiff, but to the corporation. They are asked to account, however, not for what they have received, but for what the corporation has lost; that is, for the damages which have resulted to the corporation from their negligence, and it is the contention of the defendants that an action for this purpose is not within the scope of the statute which alone affords authority to the Attorney General to bring them into court. At the outset, it may be noted that the statute makes no distinction between an accounting for the fruits of fraud and for damages arising from the loss of funds through official neglect, and either class of cases is equally within the ordinary meaning of the words employed. Subdivision 2 of section 1781 authorizes the action against officers and directors for the purpose of compelling them to pay to the corporation the value of any property "which they have acquired to themselves," or which they have "lost or wasted" by a violation of their duties; and, unless the court is to find some reason for an interpreta-

tion sensibly affecting the apparent meaning of the words used in the statute, the distinction between fraud and negligence is not of moment for the purposes of the present case.

The general scope of sections 1781 and 1782 of the Code, in so far as they purport to invest the Attorney General with authority to call corporate officers to account, has been, however, the subject of much judicial discussion. These sections are a re-enactment of earlier statutory provisions (2 Rev. St. [1st Ed.] pt. 3, c. 8, tit. 4, §§ 33, 35), adopted to remedy a defect in the jurisdiction of the court of chancery, deemed to have been pointed out by Chancellor Kent in Attorney General v. Utica Ins. Co., 2 Johns. Ch. 371, and, according to the reviser's note, "to give the court of chancery in this state the same power that is exercised by that court in England in cases of charitable corporations, and in other cases."

In People v. Lowe, 117 N. Y. 175, 22 N. E. 1016, the view was expressed that, regard being had to the origin of the statute in question, the Attorney General was not thereby given authority to bring an accounting suit against directors of a corporation unless the corporation were eleemosynary in character or the public interests were substantially involved. The point was not actually decided because of a division among the judges, and the court was again divided upon the question in People v. Ballard, 134 N. Y. 272, note, 32 N. E. 54, 17 L. R. A. 737, but, upon a reargument (134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737) it was finally held that these sections of the Code were intended to confer authority upon the Attorney General to institute an action against officers and directors of any business corporation for an accounting, in the interests of the corporation, and that the question of the advisability of the litigation was a matter exclusively for the Attorney General to determine, free from any control of the court. Code Civ. Proc. § 1808. It is to be observed that in the exhaustive discussion of the application of this statute in the cases referred to, there is no word to suggest that, so far as an action is authorized at all, the statute does not mean what it says when including a right to an accounting for property "lost or wasted" with an accounting for property which the officers or directors have "acquired to themselves." The purpose of the statute, as pointed out by Judge Vann in People v. Ballard, was to provide a comprehensive means of judicial supervision of the affairs of business corporations in the integrity of whose management the public has an interest "in a broad and political sense," and it is apparent that continuous wasteful mismanagement, particularly in the case of a life insurance corporation, could touch this public interest to much the same degree as would the diminishing of the corporate assets through fraud upon the part of those charged with the duty faithfully and diligently to conduct its business.

With the extent of the particular acts or omissions of the directors as presenting a case important to the public interests, the court is not concerned, since this is a matter confided by the Legislaure to the judgment of the Attorney General (People v. Ballard, supra); but, in view of the words and the purpose of this statute, its application to a case involving a negligent loss of assets, equally with a case of fraudulent diversion

of funds, is, I think, clear. The distinction between malfeasance and misfeasance, as related to the remedy, in actions brought by a corporation (or its receiver) directly against fraudulent or negligent directors, has no actual bearing upon the questions involved in the present case. The corporation, or its receiver, may not maintain an action in equity for an accounting where the loss has been occasioned merely by the negligence of the officers or directors sought to be charged, since the plaintiff in such a case has an adequate remedy at law, the loss being traced to a failure of duty upon the part of an agent resulting in damages to his principal; but, where the loss is brought about by fraud, or conspiracy upon the part of directors, it is held that they are accountable, in equity, as trustees, for the property which they have laid hands upon. O'Brien v. Fitzgerald, 143 N. Y. 377, 38 N. E. 371, 6 App. Div. 509, 39 N. Y. Supp. 707; Dykman v. Keeney, 154 N. Y. 483, 48 N. E. 894; Higgins v. Tefft, 4 App. Div. 62, 38 N. Y. Supp. 716. This does not mean, however, that, as an underlying principle of jurisprudence, a loss of corporate assets may be charged upon a director or officer for his negligence only where the plaintiff may take a money judgment. The distinction referred to depends simply upon the adequacy of the remedy at law to assuage the loss. A stockholder, who sues not for his individual damage, but to protect his interests in procuring a return to the corporation of funds lost by its officers or directors, whether through negligence or fraud, may maintain an action in equity and only in equity (Brinckerhoff v. Bostwick, 105 N. Y. 567, 12 N. E. 58), because as was pointed out in O'Brien v. Fitzgerald, supra, the plaintiff could not have a judgment for a sum of money and had no remedy at law. Such, in substance, is the position of the people, as plaintiff in the statutory action before me. The purpose of the action is to compel a return to the corporation of assets lost through negligence, and, the right of action being given by the statute, the sufficiency of the complaint is not to be successfully assailed upon the theory that if the plaintiff were somebody else there would be no cause of action for equitable relief. As I view the subject, therefore, the complaint is to be deemed sufficient as against each demurring defendant whose negligence is stated, by proper averment of facts, to have led to a loss of assets of this corporation. That every instance of loss does not involve each defendant is unimportant, nor is it essential that the periods of service of the defendants as officers or directors should coincide. In an action of this character all officers or directors who have, by their acts or omissions, caused a loss to result, although at different times, may be joined and the separate instances of loss are to be treated not as separate causes of action, but as necessary allegations of fact to support one cause of action for an accounting. Young v. Hyde, 112 App. Div. 760, 98 N. Y. Supp. 1052; Mabon v. Miller, 81 App. Div. 10, 80 N. Y. Supp. 979; Ackerman v. Halsey, 37 N. J. Eq. 356; Jacobus v. Diamond S. W. Mfg. Co., 94 App. Div. 366, 98 N. Y. Supp. 302.

Examining the substantive allegations of fact in this complaint contained in paragraphs tenth to twentieth, inclusive, there is found a series of transactions "caused or permitted," as alleged, by the individ-

ual defendants when officers or directors of this corporation. In some cases the participating defendants are directly named, in others the dates of the transactions, taken with the schedule showing the periods of service of the defendants as directors, disclose the parties to whom the averments of fact are pointed.

Thus in paragraphs tenth, twelfth, and thirteenth we have statements of fact which directly identify the 27 of the defendants with losses sustained by the corporation, and "caused or permitted" by them, under circumstances which, apart from a strong suggestion of bad faith and personal profit, bear a necessary inference that reasonable care for the interests of the corporation was omitted.

The tenth paragraph sets forth the fact that premises of great value, owned by the corporation, were leased to the Mercantile Safe Deposit Company, by a renewal lease, made in the year 1900 by the individual defendants named, for an inadequate rental and upon terms greatly to the disadvantage of the lessor, and point is given to the averments by the fact alleged that for 15 years, 4 of which came under this lease of 1900, the lessor corporation had expended, under the terms of this and prior leases, substantially more than was paid for rent, while the lessee corporation, in which the defendants named were interested as stockholders, and whose only asset was the lease in question, was paying large dividends. The ultimate fact of a loss through negligence, to say the least, is thus apparent from what is averred. The plaintiff was not required to plead evidentiary facts as to the exact terms of the lease, nor is there ground for the assumption, suggested by counsel for the demurrants, that the lease was merely a compulsory renewal. The allegation is that the defendants "entered into a lease or a renewal of a lease," and, treating this as alleging only a renewal, there is still nothing to support the inference that the tenant had a right to demand that the improvident lease be renewed; the mere use of the term implies the landlord's power to consent to the continued tenancy or to withhold that consent. Nor was it necessary to allege that the defendants named voted personally upon the proposition to renew the lease. The complaint states directly, and by reference to the charter and by-laws of the corporation which are annexed to it, that the directors were, as such, charged with the management of the corporation, and that, in these instances of loss of assets, the loss was "caused or permitted" by them. The actual vote of a director, or his omission to avail himself of his right to vote, would be evidence bearing upon the issue tendered as to his having permitted something which he had an opportunity, with reasonable diligence, to prevent, but evidentiary facts are not to be looked for in the complaint, nor does their omission call for the drawing of the adverse inferences upon which, in the main, the defendants' argument is found to rest.

Paragraph twelfth discloses that the defendants named caused funds of the corporation to be kept on deposit in trust companies, of which they were stockholders, at a small rate of interest, and at the same time caused payments to be made by the corporation to these trust companies at a greater rate, for interest upon ostensible loans carried upon the trust companies' books, but not actually made to the corporation,

other than in the form of giving it a credit which was not to be made the basis of withdrawals. The argument in support of the demurrers—that this paragraph touches no more than the matter of legitimate business judgment in the carrying of bank accounts—overlooks the plain extent of what is alleged as well as of what is obviously to be inferred from the facts, all in harmony with the averment that the particular defendants permitted the assets to be wasted and, as a result of the transaction, "acquired to themselves or transferred to others" the sums which they permitted the corporation to lose.

So, too, in paragraph thirteenth, a very substantial loss to the corporation is alleged through the acts of the defendants named therein, as well as all the defendants who were directors in the latter part of the year 1902 (which would indicate all but two of the defendants named in the action), by reason of their election to accept for the corporation the sum of $210 for each share of its holdings of stock of the Western National Bank (amounting to 12,000 shares) in the course of a transaction undertaken by the defendants named, for their personal interests, while the market value of the stock was not less than $600 per share. Here, but for the great difference between the selling price and the market value of the stock and the fact that the defendants, or some of them, are directly alleged to have profited by the transaction, it might be suggested, as the demurrants do suggest, that the exercise of business judgment was alone involved. As the facts are stated, however, their import is that the opportunity for exercising judgment was deliberately misused in the case of some defendants, and that there was an acquiescent omission upon the part of the others to use any judgment at all. The difficulty of the defendants' criticism of these averments of fact, in the main, is that the claim of insufficiency in the statement rests upon the assumption that the pleader should go so far as to negative the existence of possible defenses. It may well be, as is argued, that upon a full disclosure of all the facts upon the trial, the neglect or malfeasance charged against these defendants—depending to a great degree upon whatever inferences of intent may be supported by the evidence—will be found to have no existence, but taking what is alleged in the complaint as admitted for the purposes of the demurrer, the ultimate facts stated, standing alone, and without explanation by the defendants, do present a case of apparent misfeasance or malfeasance as a matter of necessary inference, and bear out the plaintiff's characterization of the intent of the parties charged so far as that intent—the mental attitude—enters into the question of active fraud or of the disregard of a duty to use some reasonable business judgment.

The fourteenth paragraph charges every defendant named in the title of the cause with having wastefully and improvidently permitted the payment of salaries to officers and employés during a series of years, the amounts being stated together with the names and offices of the persons who were paid, and it is alleged that:

"Said salaries were and each of them was improper and largely in excess of the value of the services rendered by the individuals named * * * and largely in excess of the sums for which the services rendered by said individ-

uals could have been obtained by said defendant society during the years specified, and that payment of said salaries resulted in substantial loss to the defendant society."

Here the issuable allegation is that the salaries were largely in excess of the value of the services rendered and of the sums for which the same services could have been procured. This is assailed as being but the opinion of the pleader, and so it is, but only in the sense of an opinion as to what the evidentiary facts at his command will support. The statement that a certain sum is in excess of the value of what is received for it, is a statement of a fact, and the truth of the statement will depend upon the evidence to be presented for the conclusion of the trial court. What that evidence is the plaintiff is not required to disclose by the complaint; it suffices that the ultimate fact is alleged. This averment of excessiveness, depending for its truth upon the pleader's estimate of what he can prove, is a statement of an issuable fact just as is a general averment of negligence in an ordinary action for a negligent injury, being a fact in its nature while yet a characterization of what the pleader claims will be established by the narration of facts known to him and not alleged. A systematic payment of excessive salaries through a period of many years, with the "permission" of these directors, clearly suggests a waste of assets through misfeasance, and thus the fourteenth paragraph presents facts sufficient for an issue.

These paragraphs of the complaint, to which I have referred, disclose a case as noted within the statutory authority of the Attorney General to assert, and, taken together, the allegations suffice to charge all the defendants who have been joined. Some other paragraphs, it may be, present no instance of a loss to the corporation, but since, as I find, the complaint is sufficient in its statement of a cause of action for an accounting as against the individual defendants, further discussion of instances alleged to support the same cause of action would be beyond the scope of the decision of these demurrers. Nor does the question arise at this time whether the plaintiff may have judgment for the removal of these officers and directors, as prayed. The demurrer for insufficiency is met by the fact that the complaint states a cause of action for some relief—an accounting—and the extent of the judgment is a matter for the trial court.

There remains for discussion, however, the twenty-first paragraph of the complaint, which treats of a subject essentially different from the matters alleged to support the prayer for an accounting, and which has given rise to the demurrers for the improper joinder of causes of action and for defect of parties. Briefly, the gist of this paragraph is that the corporation "and its officers, with the consent and approval, and without the prevention and interference of the * * * board of directors," has for many years failed to distribute to policy holders the share of the profits of the corporate enterprise called the "surplus," to which, under a possible construction of the charter and by-laws, they were entitled. This, in its statement, is a distinct cause of action asserted against the corporation, and one which does not affect the individual defendants in the slightest degree, for the purposes of any

judgment in conformity with the allegations, nor are they in any aspect proper or necessary parties to the record from which such a judgment is to proceed. The individual defendants have done nothing with this "surplus," and it remains in the treasury of the corporation. If it is to be divided, the direction for a distribution is something which will concern the corporation, not the individual defendants, and there is nothing for which they are to "account," by reason of their approval of the corporation's past inactivity in paying out funds which have come into its possession. The statute which affords authority for this action (Code Civ. Proc. §§ 1781, 1782) contemplates an accounting by directors where, in some way, the corporation has been put to a loss, or its assets have been placed in jeopardy by the acts of the defendants, and the action is for the benefit of the corporation itself. It is not important at the present time to determine whether this paragraph of the complaint states a sufficient cause of action against the defendant corporation. It certainly states no cause of action against the individual defendants, yet is made the basis of a separate demand for judgment in so far as a distribution of the "surplus" is sought, and the individual defendants have no interest to challenge the sufficiency of this attempted statement of a cause of action against the corporation, while the latter, for its part, has not demurred. Thus, so far as this paragraph is concerned I have before me only the proposition that there is an improper joinder of causes of action, and that there is a defect of parties in the nonjoinder of the policy holders, or one or more of them, as the representatives of all. To this extent I must hold that the demurrers should be sustained.

The asserted cause of action for a distribution of the "surplus" can affect but one of the 50 defendants joined, and as to the 49 no judgment can be rendered which, in accordance with the allegations, would concern them as proper parties. Therefore, the causes of action are improperly united. Code Civ. Proc. § 484; Weeks v. Cornwall, 39 Hun, 645; Chase v. Vanderbilt, 62 N. Y. 307; Allen v. New Jersey R. S. R. Co., 49 How. Prac. 14. So, too, there is a defect of parties in the nonjoinder of the policy holders, at least by representation (Code Civ. Proc. § 448), since, assuming that the distribution prayed for could be ordered in this action, the persons who alone are to be benefited, in accordance with the extent of their actual legal rights, as they may be determined, should be heard. From the nature of the case the record would be incomplete for the purpose of the judgment sought, unless these persons, whose interests are to be concluded, be joined, and no reason is suggested for a departure in this case from the rule which requires that parties who are to be actually affected by a decree and whose rights and interests are to be measured thereby should be before the court.

The demurrers are sustained so far as based upon the improper joinder of causes of action, in the statement of a distinct cause of action in paragraph twenty-first of the complaint, and upon a defect of parties in the nonjoinder of necessary parties for the purposes of the judgment sought for the distribution of the "surplus" referred to in

paragraph twenty-first. In other respects, the demurrers are severally overruled, with leave to defendants to answer within 20 days.

Demurrers overruled, with leave to defendants to answer within 20 days.