OPINION OF THE COURT
Emily Jane Goodman, J.
Motion sequence numbers 001 and 002 are hereby consolidated for disposition.
This citizen taxpayer action pursuant to State Finance Law § 123 et seq. seeks money damages from Assembly Speaker Sheldon Silver and his former chief legal counsel, James Michael Boxley, for the sum paid by the State of New York in settlement of a prior action entitled Doe v New York State Assembly (Sup Ct, Albany County, index No. 3314/04) (the Jane Doe action).
In motion sequence number 001, defendant Silver moves to dismiss the complaint, pursuant to CPLR 3211 (a) (2), (7) and (8), on the grounds that the court lacks subject matter jurisdiction over this action, the complaint fails to state a cause of action,. and the court lacks personal jurisdiction over Silver in his individual capacity.
In motion sequence number 002, defendant Boxley moves to dismiss the complaint, pursuant to CPLR 3211 (a) (7), on the ground that the complaint fails to state a cause of action under the State Finance Law against a private citizen who reached a court-approved settlement with another private citizen. Additionally, defendant Boxley moves to dismiss the complaint on the ground that plaintiff is not an aggrieved person and lacks standing to sue him, or because his complaint is, in reality, an improper appeal of the settlement of the Jane Doe action.
Facts
The following facts are undisputed and supported by documentary evidence. The Jane Doe action was commenced on or about June 4, 2004 by a female employee of the New York State As *838 sembly who was allegedly raped and sexually harassed by Boxley. Boxley, who was employed by the Assembly as chief legal counsel to Silver, did, according to the complaint, on or about June 9, 2003, compel and coerce her to attend a work-related function outside the office, after which he raped her while she was incapable of consent due to her state of sleep and/or intoxication. Because both the Assembly and Silver allegedly failed to take action to prevent and correct the unwelcome, harassing and violent behavior, in addition to suing Boxley for assault and battery, the complaint alleged a cause of action against the Assembly, the State and Silver for sexual discrimination in violation of the New York State Human Rights Law.
The Assembly, the State and Silver appeared by the Attorney General and moved, pursuant to CPLR 3211 (a) (7), to dismiss the complaint as against them for failure to state a cause of action. By decision and order dated March 15, 2005, Justice Thomas J. McNamara dismissed the Assembly as a defendant, finding that body to be a component of the State only, and finding that the State, not the Assembly, was Jane Doe’s employer. Justice McNamara further ruled that, because Jane Doe did not claim that Silver participated in the underlying conduct, and this court is bound by that finding, no cause of action was stated against him, individually, for aiding and abetting under Executive Law § 296 (6), a subdivision which allows for personal liability based on active participation in the conduct giving rise to a discrimination claim under the Executive Law. However, he ruled that Silver may be treated as Jane Doe’s employer under Executive Law § 296 (1), because the complaint alleged that he was the person at the Assembly with the authority to determine and investigate complaints of sexual harassment, and the complaint alleged facts which, if proven, could establish that Silver was aware of prior allegations of sexual harassment by Boxley and failed to respond appropriately to these serious charges.
The Jane Doe action was settled in June 2006 for $507,500 with the approval of Justice McNamara with the State of New York paying $500,000, conditioned on the approval of all appropriate state officials in accordance with the provisions for indemnification under section 17 of the Public Officers Law, and $7,500 contributed by Boxley, who was represented by private counsel in that litigation. In addition to the monetary settlement, the Assembly agreed to make certain specified modifications to its “Sexual Harassment Prevention Policy.” *839 Boxley actually applied to the State to pay his counsel fees in defending the Jane Doe action, and that application was denied by then Attorney General Eliot Spitzer as untimely and because his actions did not occur in the course of his employment. Undeterred, Boxley sought review of that determination pursuant to CPLR article 78; by order dated February 22, 2007, the Supreme Court, Albany County, rejected Boxley’s challenge.
In this present action, plaintiff Santora, as a citizen of New York, sues to obtain “restitution to [the State] from Silver and Boxley of the $480,000[1] that was paid by [the State] in settlement of the Jane Doe action.” (Complaint H 8 [b].) Santora contends that the settlement of the Jane Doe action “should have come from the pockets of Messrs. Silver and Boxley, and not from the taxpayers of New York.” {Id. 1Í13.) Santora also seeks money damages for the value of the legal services provided by the Attorney General in connection with his defense of Silver in the Jane Doe action, and further contends that the Attorney General must be prevented from appearing in the present action on behalf of Silver. {Id. 1Í1Í 7, 8 [b]; 1Í15.)
Discussion
The court finds all of the underlying facts and circumstances and conduct on the part of any lawyer, and specifically, a lawyer in the employ of and on the payroll of the State of New York, as counsel to the excessively powerful Speaker of the Assembly, and the cavalier conduct of said Speaker as alleged, outrageous and disgraceful. It is not known whether any professional disciplinary action has been taken.
“On a motion addressed to the sufficiency of a complaint pursuant to CPLR 3211 (a) (7), the facts pleaded are presumed to be true and accorded every favorable inference. However, allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence, are not entitled to such consideration.” (Franklin v Winard, 199 AD2d 220, 220 [1st Dept 1993]; see also Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006].)
Section 123-b of the State Finance Law provides, in pertinent part:
*840 “[A]ny person, who is a citizen taxpayer, whether or not such person is or may be affected or specially aggrieved by the activity herein referred to, may maintain an action for equitable or declaratory relief, or both, against an officer or employee of the state who in the course of his or her duties has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property.”
While this section “provides standing to citizen taxpayers against a State officer or employee; it does not create a substantive cause of action.” (Matter of Lancaster Dev. v Power Auth. of State of N.Y., 145 AD2d 806, 807 [3d Dept 1988], lv denied 74 NY2d 612 [1989].)
There is no allegation that Silver, in the course of his duties as the Assembly Speaker, caused the wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds, even if the earlier termination of Boxley would have preempted sexual misconduct while on the state payroll, and the payment of damages. Rather, by this lawsuit, Santora seeks to challenge the nonparty Attorney General’s handling of civil litigation brought against the State and against a public officer alleging violations of the Executive Law in connection with his official duties. Public Officers Law § 17 (3) (b) provides that where the Attorney General represents an employee of the state, e.g., Silver, any proposed settlement must be submitted to the Attorney General who “shall review such proposed settlement as to form and amount, and shall give his approval if in his judgment the settlement is in the best interests of the state” (emphasis added). Thus, even accepting plaintiffs argument that the State’s settlement of the Jane Doe action was solely on Silver’s behalf and was illegal, because section 17 (3) (a) of the Public Officers Law forbids the State to indemnify “intentional wrongdoing” and, that Silver engaged in intentional wrongdoing in covering up Boxley’s conduct, it was the nonparty Attorney General Eliot Spitzer who determined that the settlement of this sexual misconduct/harassment lawsuit was in the best interests of this State.
The complaint fails to allege any illegal or wrongful expenditure of state funds on Silver’s behalf, even if Silver had demonstrated leadership which would have led to an entirely different and more acceptable outcome. “[A] claim that state funds are not being spent wisely is patently insufficient to satisfy the min *841 imum threshold for standing [under this statute].” (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 813 [2003], cert denied 540 US 1017 [2003]; see also New York State Assn. of Small City School Dists., Inc. v State of New York, 42 AD3d 648, 650-651 [3d Dept 2007].) Here, Santora challenges Attorney General Spitzer’s decision, made pursuant to Public Officers Law § 17 (3) (b), to defend and indemnify Silver for the sexual discrimination claim made by Jane Doe. Contrary to plaintiff’s arguments, the Attorney General was required to defend Silver in the Jane Doe action, because Jane Doe alleged that Silver was acting in the scope of his employment by the Assembly in failing to investigate prior allegations that Boxley had sexually harassed female Assembly employees. “If the allegations of the complaint suggest that any of the conduct asserted falls reasonably within the scope of employment, the duty to provide a defense is triggered since the duty to defend is extremely broad and exists regardless of how baseless the complaint may be.” (Matter of Dreyer v City of Saratoga Springs, 43 AD3d 586, 588 [3d Dept 2007]; see also Matter of Sharrow v State of New York, 216 AD2d 844, 845 [3d Dept 1995], lv denied 87 NY2d 801 [1995]; Matter of Polak v City of Schenectady, 181 AD2d 233, 236 [3d Dept 1992].) Accordingly, the complaint fails to allege any illegal or unconstitutional conduct in connection with the Attorney General’s handling of the Jane Doe action.
In addition, plaintiff’s attempt to seek restitution for the value of the legal services provided to Silver by the Attorney General in the Jane Doe action is without merit, since the Attorney General’s representation of public officers does not entail the expenditure of public funds within the meaning of the State Finance Law. The Court of Appeals has emphasized that in order to proceed under State Finance Law § 123-b, “a plaintiffs claims must have a sufficient nexus to fiscal activities of the State in order to confer standing.” (Saratoga County Chamber of Commerce, Inc., 100 NY2d at 813 [internal quotation marks omitted; emphasis added].) Here, plaintiff attempts to obtain judicial scrutiny of statutorily-mandated nonfiscal activity of the Attorney General, which the court is powerless to undertake.
The proposition advanced by plaintiff — that the Supreme Court possesses the authority to superintend the litigation decisions of the Attorney General, after the fact — is an impermissible violation of the separation of powers doctrine, a doctrine given too little respect in recent years, as illustrated by Chief Judge Judith Kaye in Kaye v Silver (Sup Ct, NY County, index *842 No. 400763/08). As the Court of Appeals observed long ago, if in representing state officers in their official or individual capacities, the Attorney General errs in judgment in the conduct of the litigation, the remedy lies not before the Supreme Court, but at the polls. (People v Ballard, 134 NY 269, 293 [1892] [“We think that the question as to what public interests require is committed to the absolute discretion of the attorney-general, and that it cannot be made the subject of inquiry by the courts. If he abuses the great power intrusted to him, a remedy may be found in his removal from office, or in the election of a successor worthy of the high position”]; see also Gerson v New York State Attorney-General, 139 AD2d 617 [2d Dept 1988] [allegations that Attorney General was negligent in prosecuting a business fraud case “involve the exercise of discretion by the Attorney-General to which governmental immunity attaches”].)[2]
The complaint must also be dismissed as against defendant Boxley. Boxley resigned from his counsel position after his arrest on June 11, 2003 and prior to the institution of the Jane Doe action; he was not represented by the Attorney General in the Jane Doe action, and his article 78 challenge to the Attorney General’s denial of his application to have the State pay his counsel fees in defending that action was denied in part because his criminal activity constituted a substantial departure from the duties of his public employment; he was represented by private counsel in the Jane Doe action; and he was personally responsible for $7,500 of the total settlement paid to Jane Doe. Even if the State Finance Law applied to Boxley, who was not a state employee at the time when the funds were disbursed, the settlement was reached by Attorney General Spitzer and Ms. Doe. Thus, while Boxley’s conduct was wrongful, distasteful *843 and repulsive, and involved lewd and indecent acts, the decision to settle this tawdry matter was made by Spitzer in what he deemed, in his wisdom, to be the best interests of the State. Further, the State Finance Law applies only to wrongful expenditures which occur “in the course” of a person’s “duties” as a state employee or officer. Plaintiff has cited no cases, nor legislative history, to support the contention that the statute was intended to apply to acts which are completely unrelated to an employee’s duties, merely because those acts occur while the employee is working for the State and victimizes other state employees.
For the foregoing reasons, it is hereby ordered that the motions to dismiss by defendants Sheldon Silver and James Michael Boxley are granted, and the complaint is dismissed, without costs and disbursements to defendants as taxed by the Clerk of the Court; and it is further ordered that the Clerk is directed to enter judgment accordingly.

. The figure of $480,000 supplied by Santora’s counsel is not supported by the math, as the State of New York paid $500,000 of the $507,500 settlement.

. Silver also argues that the Supreme Court lacks subject matter jurisdiction because the Court of Claims has exclusive jurisdiction over actions for money damages against state officials acting in their official capacities pursuant to NY Constitution, article VI, § 9 and section 9 (4) of the Court of Claims Act. In addition, Silver maintains that the court lacks personal jurisdiction because he contends that service of process was made on June 5, 2008 on the office of the Speaker, pursuant to CPLR 307, which governs personal service on a state officer sued solely in an official capacity. Plaintiff, however, contends that he intended to sue Silver in his personal or individual capacity, and proffers an affidavit of service which recites that Silver was served on June 5, 2008 with the summons and complaint, not pursuant to CPLR 307, but pursuant to CPLR 308 (2), by delivering a copy to a person of suitable age and discretion at Silver’s actual place of business and by mailing an additional copy to his actual place of business. Accordingly, that portion of Silver’s motion seeking to dismiss the complaint for lack of subject matter jurisdiction and lack of personal jurisdiction is denied.